THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN ECHARD, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 2:21-cv-00112-JCC<br><br>PLAINTIFF'S RESPONSE TO WELLS FARGO'S MOTION TO DISMISS |

## I. INTRODUCTION

Plaintiff Brian Echard, on behalf of himself and the members of the putative class, requests the Court deny Wells Fargo's Motion to Dismiss. As described in Plaintiff's Complaint, Wells Fargo converted an element of our nation's pandemic relief into a scam that preyed on vulnerable homeowners across the nation. This putative class action seeks to hold Wells Fargo accountable and to obtain just compensation for injured homeowners across the nation. Plaintiff seeks to represent a class representing all injured customers and also a class of military borrowers that assert additional claims based upon having a loan backed by the Department of Veterans Affairs ("VA") and having received additional guarantees from Wells Fargo.

Wells Fargo admits many of the facts relating to its forbearance scam but tries to avoid liability by twisting the facts of this case and making misleading arguments. For example, Wells Fargo asks the Court to dismiss Plaintiff's TILA claims because the complaint does not identify



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Wells Fargo as the lender. Dkt. 6 at 27:10. These arguments are not brought in good faith because Wells Fargo knows that it is the lender and, indeed, it filed the mortgage confirming this with its motion. Dkt. 7 at 6.

With this brief, Plaintiff is filing a First Amended Complaint to address Wells Fargo's[1] petty complaints and to narrow the dispute to case-critical issues. The remainder of Wells Fargo's motion to dismiss should be denied.

## II. STATEMENT OF FACTS

Wells Fargo perpetrated a nationwide scam on customers that was intended to create wrongful profit for Wells Fargo, and even worse, it did so using a government program that was designed to help vulnerable homeowners during the pandemic. Amended Compl. at ¶ 1. As a result of the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in March 2020, which among other things, created a mortgage forbearance program to assist homeowners who are struggling to pay their mortgage as a result of the economic difficulties caused by the pandemic. *Id.* at ¶ 10.

One of the key protections of the CARES Act's forbearance program is that it guaranteed customers ***the choice*** about whether or not to opt into the program. *Id*. at ¶ 41-44. Entering forbearance is a critical decision because it only temporarily delays payment on a loan but can lead to negative consequences and financial injury for borrowers. This why the VA advises military borrowers to carefully consider whether to opt into forbearance. *Id*. at ¶ 41.

---

[1] The amended complaint removes Wells Fargo & Company ("WFC") as a defendant. The original complaint asserted a basis for WFC liability based "upon information and belief." Should discovery reveal facts giving rise to WFC liability, plaintiff will move to amend the complaint to add WFC back in as a defendant.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

In response to the frequently asked question "Should I request a COVID-19 forbearance?" the VA advises customers that "Only you can make this decision". *Id*. at ¶ 41.[2] Plaintiff's mortgage contained procedural safeguards that ensured that he would have the opportunity to make this decision. It required this critical communication to be in writing and sent by mail – ensuring that the customer's decision was clear and traceable. *Id*. at ¶ 99.

Wells Fargo did not allow Plaintiff or other customers to make this decision. It unilaterally placed unwitting borrowers into its COVID-19 mortgage forbearance program, without obtaining informed and legal consent, without requesting or receiving any financial hardship attestation, and without requesting or receiving written instructions as required by the mortgage contract. *Id.* at ¶¶ 14, 49, 54, 76, 99.

Customers went to Wells Fargo's website which included a link to obtain information about the relief program, and upon the click of a button which made no mention of forbearance, their accounts were placed into forbearance. *Id*. at ¶ 15. As one customer told the Consumer Financial Protection Bureau, a Wells Fargo employee admitted "that the system is like a 'hair trigger'" automatically placing loans into forbearance "even though I did nothing to start a forbearance." *Id*. at ¶ 52.

This scam was perpetrated uniformly, but it had a different legal impact on customers who are active duty servicemembers or veterans with a VA loan, including Plaintiff Brian Echard. *Id*. at ¶¶ 2, 70-71. Such military borrowers enjoy additional legal protections and a reasonable expectation of greater care from mortgage lenders and servicers like Wells Fargo. *Id*. at ¶¶ 34-41. Wells Fargo makes promises on its website that it will provide these greater protections to military borrowers, including having in place a "dedicated team" to provide such

---

[2] Citing https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ4 (last visited May 1, 2021).



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

assistance. *Id*. at ¶ 36. Despite making these promises to military customers, Wells Fargo perpetrated the same scam on this special class of customers as it did to customers across the nation. *Id*. at ¶¶ 9, 19.

Indeed, Wells Fargo has admitted many of the allegations contained in Plaintiff's complaint. Its spokesperson, Tom Goyda said " [i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases," *id*. at ¶ 53, admitting it received 1,600 complaints of unwanted forbearances. *Id*. at ¶ 90.

## III. ARGUMENT

### A. Wells Fargo owed fiduciary duties to Plaintiff and Military Borrowers.

The First Amended Complaint does not bring a claim under the Servicemember Civil Relief Act.[3] But it alleges that Wells Fargo owed and breached fiduciary duties to Plaintiff and other military borrowers.[4] This claim is not subject to dismissal.

Although the lender-borrower relationship *generally* does not give rise to a fiduciary relationship, under "special circumstances"—including those alleged in this case—it can. *Groob v. KeyBank*, 2006-Ohio-1189, 108 Ohio St. 3d 348, 843 N.E.2d 1170, 1175 (finding that a fiduciary duty does not arise between a bank and prospective borrower *unless there are special circumstances*.") (emphasis added). "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another, and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Carnahan v. SCI Ohio Funeral*

---

[3] Notably, the original complaint asserted that claim only on behalf of absent members, not on behalf of Mr. Echard. Dkt. 1 at ¶ 109. Plaintiff will seek to add additional plaintiffs whose mortgages were subject to the SCRA and can assert that claim.

[4] Plaintiffs allege that a fiduciary relationship exists between the bank and its military customers, which includes active duty servicemembers and veterans. As one owed this duty, Plaintiff is entitled to "invoke" it, regardless of the fact that he is a veteran rather than an active duty servicemember. Dkt. 6 at 21:27-38.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

*Servs.*, No. 00AP-490, 2001 Ohio App. LEXIS 1106 at *14 (Ct. App. Mar. 13, 2001) (internal quotation marks and citations omitted).

Whether a fiduciary relationship exists is a fact specific inquiry, which can preclude motions to dismiss. *Sinclair v. Donovan*, No. 1:11-CV-00010, 2011 U.S. Dist. LEXIS 128220 at *35-36 (S.D. Ohio Nov. 4, 2011) (Denying defendant's 12(b)(6) motion to dismiss finding that "it is clear that Ohio law requires a fact-specific inquiry to determine whether a purported business relationship has evolved into a fiduciary one."). Indeed, in a class action on behalf of servicemembers against Bank of America for claims related to overcharges of interest, the court refused to dismiss the plaintiffs' fiduciary duty claims, finding that "plaintiffs have pled sufficient facts to create a plausible claim that a fiduciary relationship existed." *Childress v. Bank of Am. Corp.*, No. 5:15-CV-231-BO, 2016 U.S. Dist. LEXIS 65512 at *8 (E.D.N.C. May 18, 2016). *See also Renasant Bank v. Ericson*, 801 F. Supp. 2d 690 (M.D. Tenn. 2011) (denying summary judgment finding that "based upon the specific facts . . . a fiduciary relationship arises where the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him.") (internal quotation marks and citations omitted); *Dolton v. Capitol Fed. Sav. & Loan Ass'n*, 642 P.2d 21, 23–24 (Colo. App. 1981) (noting that "a fiduciary relationship between a borrower and lender has been found to exist where there is a repose of trust by the customer along with an acceptance or invitation of such trust on the part of the lending institution," and collecting cases); *Linden Place, LLC v. Stanley Bank*, 167 P.3d 374, 380 (Kan. Ct. App. 2007) (bank's specific assurances that it was looking out for plaintiff's interests with regard to an internal investigation suggested fiduciary duty); *Klein v First Edina Nat. Bank*, 196 N.W.2d 619, 623 (Minn. 1972) (bank's actual or constructive knowledge that a customer is relying upon it for advice will give rise to the duty).



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Here, the Complaint here alleges facts regarding the "special circumstances" present here sufficient to create a fiduciary obligation on the part of Wells Fargo. *See* First Amended Compl. at ¶¶ 34-41. For instance, Wells Fargo's website claims to provide military veterans and their families with "home financing education." *Id*. at ¶ 35. The website also promises to provide military customers with "Dedicated attention" and "Specialized services." *Id*. at ¶ 36. Indeed, Wells Fargo even recognizes that its "military and veteran community" have "unique needs." *Id.* The bank promises to have a special team who are "uniquely qualified" due to their "understanding of military and veteran culture." *Id*. Plaintiff alleges that by maintaining a "Wells Fargo Military Bank Center" that Defendants touted themselves as a source of trusted information for military and veteran customers regarding SCRA benefits and VA backed loans. *Id*. at ¶ 38. Furthermore, Plaintiff alleges that Wells Fargo knew he was a military borrower and that he received communication from Wells Fargo that was intended specifically for "customers with VA loans" regarding the forbearance scam Wells Fargo has perpetrated which is the subject of this case. *Id*. at ¶ 78. As Plaintiff specifically alleges, Wells Fargo did not have a "typical arms-length lender/borrower relationship with Plaintiff and the Nationwide Military Class Members." *Id*. at ¶ 117.

In addition to alleging specific facts regarding Wells Fargo's relationship with its military customers, Plaintiff also alleges facts regarding VA regulations, and the special protections they provide to military personnel and veterans. *Id*. at ¶¶ 39-41. Contrary to Wells Fargo's assertion, Plaintiff is not arguing that fiduciary relationship exists solely based on the fact that Wells Fargo must comply with VA regulations. Dkt. 6 at 21:15-26 (citing *Tanner v. Wells Fargo Bank, N.A.*, No. 1:20-cv-01104, 2020 U.S. Dist. LEXIS 232717 (N.D. Ohio Dec. 10, 2020)). Rather, the existence of these regulations is just another fact which shows that military and veteran borrowers are a unique class of persons entitled to special protections not applicable to the



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

average borrower such that a fiduciary relationship exists. The plaintiff in *Tanner* based her fiduciary duty claim *solely* on the fact that her contract with the bank involved a HUD regulation, and the court ultimately found that the plaintiff and the bank "had nothing more than a typical business relationship." *Id*. at 18. That is not the case here.

In one Ohio case, the court found that if the bank is giving advice to the loan customer rather than operating at arm's length, "the bank may assume the role of its customer's fiduciary." *Stone v. Davis*, 66 Ohio St. 2d 74, 78 (1981). There, the plaintiffs were "a young married couple, apparently encountering the complex loan process for the first time in their lives" and they "justifiably relied" on the bank "as experts in the field of loan processing." *Id*. at 79. Following the reasoning in *Stone*, the court in *Sinclair*, 2011 U.S. Dist. LEXIS 128220 at *34, found that while "Plaintiffs cannot unilaterally turn the Lender Defendants into a fiduciary simply by reposing trust in them," that the plaintiffs "have pled adequate facts from which a plausible claim for breach of fiduciary duty could obtain." In that case, the plaintiffs were of low-to-moderate income status and the court presumed them to be "as unsophisticated as the young, married couple." *Id*. at *35. Additionally, plaintiffs in *Sinclair* had alleged an extensive regulatory scheme regarding the Federal Housing Administration Loss Mitigation Program that "Lender Defendants can be presumed to have extensive knowledge of the details of the Program." *Id*.

As in *Stone* and *Sinclair*, Plaintiff here has alleged similarly adequate facts such that the motion to dismiss should be denied. Military and veteran borrowers have "unique needs" similar to the way in which a financially unsophisticated young married couple has unique needs. Wells Fargo also invited these customers to trust them via promises made on their website. And, it can be presumed that Wells Fargo understands the regulatory scheme which applies to it, including the VA regulations which provide special protections for military borrowers.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Moreover, in this situation Wells Fargo was dealing with a subset of military borrowers that Wells Fargo knew to be experiencing financial hardship due to an unprecedented global pandemic. Wells Fargo knew that these military borrowers were entitled to additional protections beyond those of the average customer, and Wells Fargo had promised a "dedicated team" to provide special services and protections to these military customers. First Amended Compl. at ¶ 36. Indeed, Wells Fargo sent its military borrowers a letter outlining these protections – but it did not do so until *after it wrongfully placed them into forbearance. Id.* at ¶ 78. These facts are more than sufficient to overcome dismissal. *See Stone*, 66 Ohio St. 2d 74, 78; *Sinclair*, 2011 U.S. Dist. LEXIS 128220 at *35-36.

**B. Wells Fargo Breached its Contract with Plaintiff.**

The Complaint adequately plead a claim for breach of contract. However, the First Amended Complaint includes more specific facts and allegations to address Defendants' claim that the Complaint failed to identify specific contract provisions that were breached.

First, Wells Fargo's scheme relied upon its breach of the contract's requirement that all notices in connection with the mortgage be in writing and sent first class mail to Wells Fargo's address stated in the mortgage and "shall not be deemed to have been given to the Lender until actually received by Lender." First Amended Compl. at ¶ 99. "The purpose of requiring written notice is not to be hypertechnical but, instead, to create certainty." *McGowan v. DM Grp. IX*, 7 Ohio App. 3d 349, 352 (1982). Where a contract required "written" notice, "anything less than a written notification is insufficient notice," and a PowerPoint presentation did not suffice to provide "certainty or definiteness." *Setzekorn v. Kost USA, Inc.*, 2009-Ohio-1011, ¶¶ 12-13 (Ct. App.) (citing *Schwer v. Benefit Assn. of Ry. Employees, Inc.*, 153 Ohio St. 312, 319-20 (1950) (notice of policy cancellation must be definite, unequivocal and certain)).



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Ohio courts have not determined that actual notice can suffice for written notice in this situation. In those contexts where actual notice can suffice, a fact-specific inquiry is required to determine that the notice given was "unequivocal" and that enforcement of the written notice requirement would be unconscionable. *See Bob Evans Farms, Inc. v. Mattingly Foods, Inc.*, No. 10CVH-04-5755, 2014 Ohio Misc. LEXIS 16236, at *12-13 (Ct. Com. Pl. Apr. 24, 2014).

Second, the First Amended Complaint alleges that Wells Fargo breached its contract by violating certain VA regulations that are incorporated into the contract and existed at the time the contract was entered. First Amended Compl. at ¶ 104. Should Wells Fargo later take issue with these claims, Plaintiff will respond accordingly.

The First Amended Complaint also alleges that Wells Fargo (1) failed to properly apply payments made by customers to the mortgage; (2) failed to properly report payments made by customers to credit agencies; and (3) failed to provide accurate and legally sufficient period statements to these customers." *Id*. at ¶ 55. With respect to Mr. Echard specifically, the complaint also states, "Wells Fargo failed to properly (1) apply those payments to the mortgage; (2) report those payments to credit agencies; or (3) calculate information on subsequent periodic payments." *Id*. at ¶ 81. These allegations specify ways in which Wells Fargo breached its contract with Mr. Echard and Class Members. *Id*. at ¶¶ 99-104.

Because Plaintiffs have sufficient alleged specific breaches of contracts by Wells Fargo, this claim should not be dismissed. Should Wells Fargo later challenge these allegations, Plaintiff will respond.

**C. Wells Fargo Breached the Implied Covenant of Good Faith and Fair Dealing.**

A claim for breach of implied covenant of good faith and fair dealing may remain in tandem with the breach of contract. *See Tanner v. Wells Fargo Bank, N.A.*, No. 1:20-cv-01104, 2020 U.S. Dist. LEXIS 232717, at *14 (N.D. Ohio Dec. 10, 2020) (citing *Lucarell v. Nationwide*



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

*Mut. Ins. Co.*, 152 Ohio St. 3d 453, 2018- Ohio 15, 97 N.E.3d 458, 469 (Ohio 2018) (Ohio law recognizes that every contract contains an implied duty for the parties to act in good faith and to deal fairly with each other, this duty is part of a breach of contract claim . . . )).

Wells Fargo sought to dismiss this claim because it was untethered to the breach of contract claim. The First Amended Complaint combines these two claims to address this critique. Wells Fargo has not asserted another basis for dismissing the alleged breach of the duty of good faith and fair dealing. Should it later do so, Plaintiff will respond.

**D. The economic loss rule does not bar any of Plaintiff's claims in this case.**

Wells Fargo's has not shown that Plaintiff's tort claims must be dismissed under the economic loss theory. Where, like here, "a contract between parties exists, a tort claim must be analyzed to determine whether it is merely a recapitulation of the breach-of-contract claim or whether it alleges a breach of an independent duty." *Ineos USA LLC v. Furmanite Am., Inc.*, 2014-Ohio-4996, ¶ 20 (Ct. App. 3rd Dist., November 10, 2014) (citing *Gator Dev. Corp v. VHH, Ltd.*, 1st Dist. Hamilton No. C-080193, 2009-Ohio-1802, ¶ 18 (Ct. App. 1st Dist. April 17, 2009)). Under Ohio law, "an action for tort may be combined with and arise from the same operative facts as a breach-of-contract action," and "where a tort claim alleges that a duty was breached independent of the contract, the economic loss rule does not apply." *Id.* at ¶ 21 (citing *Burns v. Prudential Securities, Inc.*, 167 Ohio App. 3d 809, 2006-Ohio-3550, ¶ 99 (3d Dist., July 11, 2006)); *Campbell v. Krupp*, 195 Ohio App. 3d 573, 2011-Ohio-2694, ¶ 16 (6th Dist., June 3, 2011); *Eysoldt v. ProScan Imaging*, 194 Ohio App. 3d 630, 2011-Ohio-2359, ¶ 21 (1st Dist., May 18, 2011)). "Thus, whether the economic loss rule applies depends upon whether the [tort] claim alleges that [the defendant] breached a duty independent of the contract and whether it alleges damages separate and distinct from those alleged in the breach of contract." *Ineos,* 2014-Ohio-4996 at ¶ 21. Here, Plaintiff's tort claims are independent of the parties' contract, seek additional



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

damages, and are therefore not precluded by the economic loss rule. Indeed, Wells Fargo cannot very well argue that Plaintiff has no breach of contract claim and, at the same time, the breach of contract claim subsumes all tort claims.

Plaintiff's allegations of negligent misrepresentation, fraud, unjust enrichment, and breach of fiduciary duty are independent of Wells Fargo's contractual duties, so the economic loss rule does not apply. *See* First Amended Compl. at ¶¶ 115-119 (breach of fiduciary duty), ¶¶ 120-127 (fraud), ¶ 170-183 (negligent misrepresentation); ¶¶ 166-169 (unjust enrichment). Indeed, Ohio courts have held that claims exempt from the economic loss rule "may include negligent misrepresentation, breach of fiduciary duty, fraud and conversion." *Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.* 2021-Ohio-158, ¶ 27 (Ct. App. 5th Dist. January 20, 2021). In fact, Ohio courts have indicated that the economic loss rule never applies to claims of negligent misrepresentation. *Potts v. Safeco Ins. Co.*, 2010-Ohio-2042, ¶ 21 (5th Dist., May 3, 2010) (citing *McCarthy, Lebit, Crystal & Haiman Co. v. First Union Mgmt., Inc.*, 87 Ohio App. 3d 613, 622 (8th Dist., May 6, 1993); *Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 121 Ohio App.3d 434, 440-41 (8th Dist., July 3, 1997)); *accord Universal Contr. Corp. v. Aug*, 2004-Ohio-7133, ¶¶ 11-13 (1st Dist., December 30, 2004)).

Plaintiff's tort claims are premised on Well Fargo's duties, which are "imposed by law to protect broad social interests of social policy," rather than on "duties assumed only by agreement." *Morgan v. Mikhail*, 2008-Ohio-4598, ¶ 63 (10th Dist. September 11, 2008) (citing *Floor Craft Floor Covering*, 54 Ohio St. 3d at 7); *id.* ("Generally, tort law protects people and property from injury, while contract law protects the parties' bargained-for expectations. Thus, when a plaintiff suffers only economic losses, a court must determine the source of the duty that forms the basis of the action." (citations omitted)).



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

As explained below, Plaintiff adequately pled claims of fraud, which are premised on duties independent of any contract. *Infra*, sec. III.E. The complaint also makes plain that Plaintiff adequately pled claims of negligent misrepresentation, which are further clarified in Plaintiff's First Amended Complaint. First Amended Compl. at ¶¶ 170-183. Under the relevant legal standards, the economic loss rule does not apply to these claims, and Defendant's motion should be denied.

*Ineos USA LLC v. Furmanite Am., Inc.* is instructive on this issue. In *Ineos*, the parties contracted for technical services for a chemical facility to comply with Environmental Protection Agency (EPA) regulations, but the defendant conducted faulty monitoring, misrepresented its procedures and fabricated data, which resulted in the plaintiff generating inaccurate reports to the EPA. 2014-Ohio-4996 at ¶ 3. Similar to here, Ineos's complaint pled fraudulent misrepresentation and unjust enrichment (among others), along with breach of contract. *Id*. In analyzing the economic loss rule, the *Ineos* court reversed summary judgment for the defendant, despite finding that the fraud claims "allege breaches of duties *similar to those alleged in the breach-of-contract*." *Id*. at ¶ 22 (emphasis added). Specifically, the court found that "[t]he breach of contract [claim] alleges a failure to perform [leak detection] monitoring, while the fraud claims allege either an affirmative misrepresentation of how [the] monitoring was performed or the failure to inform Ineos of problems with the [leak detection] monitoring when [the defendant] had a duty to speak." *Id*. This, along with a dispute between the parties about the duties imposed by their contract and the claim for separate damages, were sufficient to deny summary judgment under the economic loss rule. *Id*. at ¶¶ 25-26.

The same should be true here. In this case, Wells Fargo created an internet interface to deceive customers, then unilaterally placed Plaintiff into its mortgage forbearance program and mismanaged the mortgage without authorization or informed consent. First Amended Compl. at



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

¶¶ 49-55. Like in *Ineos*, Plaintiff's fraud, negligence and unjust enrichment claims are similar to the breach of contract claims, but they are separate and premised on different duties, placing them outside the economic loss rule.

In *Windsor Medical*, 2021-Ohio-158 at ¶¶ 2-13, the plaintiff claimed fraud and statutory violations when a telecommunications company charged the plaintiff for international phone service to which the plaintiff did not consent and double-billed for internet services. The Court of Appeals held that Time Warner could not overcome a fraud judgment with the economic loss rule. *Id*. at ¶¶ 20-21. In so holding, the court noted that there are exceptions to the application of the economic loss rule for "negligent misrepresentation, breach of fiduciary duty, fraud and conversion." *Id*. at ¶ 27 (internal citation omitted). The court states:

> [A] tort claim can proceed where 'the facts of the case show an international tort committed independently, but in connection with a breach of contract. . . .' Accordingly, where a tort claim alleges a duty was breached independent of the contract, the economic loss rule does not apply. . . .
>
> Spectrum claims Windsor Medical failed to identify a duty separate from Spectrum's contractual obligations. We disagree. While the parties were in privity of contract, we find Spectrum breached duties which were independent of those contractual obligations . . . Spectrum, through its representatives, engaged in a pattern of misrepresentations, false promises, and threats.

*Id*. at ¶¶ 28-29 (internal citations omitted).

Here, like in *Windsor Medical*, Wells Fargo took action on Plaintiff's account without consent after making fraudulent misrepresentations, made further fraudulent misrepresentations after the fact, and then Wells Fargo mismanaged those accounts further by failing to correctly apply payments made to the mortgage, failing to report payments to credit agencies, and failing to provide accurate mortgage statements. First Amended Compl. at ¶¶ 15, 49-55, 76, 79, 122-124. And as in *Windsor Medical*, Plaintiff's "fraud claim . . . did not arise out of the parties' contracts, but went beyond and were independent of those agreements." *Windsor Medical,* 2021-



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Ohio-158 at ¶ 35; *and see id*. at ¶ 36 (also finding the damages sought were not entirely dependent upon the terms of the parties' contract). The economic loss rule does not apply.

Finally, Plaintiff alleges damages beyond purely economic loss, making the economic loss rule inapplicable on this basis too. *See Corporex*, 2005-Ohio-5409 at ¶ 6. *See* First Amended Compl. at ¶¶ 126, 138, 146 (alleging reputational damage, frustration, and outrage). These damages are not "purely economic" losses. *See Nadra v. Mbah*, 119 Ohio St. 3d 305, 311 (Ohio 2008) (recognizing "injury to one's reputation" as a personal injury) (citation omitted); *Perrysburg Twp. v. City of Rossford*, 103 Ohio St. 3d 79, 81 (Ohio 2004) ("In reviewing whether a motion to dismiss should be granted, we accept as true all factual allegations in the complaint." (citation omitted)). Nor are these the types of damages "within the contemplation of the parties when framing their agreement." *Carasalina, LLC v. Smith Phillips & Assocs.*, 2014-Ohio-2423, ¶ 25 (10th Dist., June 5, 2014). Having pled and supported claims for non-economic damages, the Court should reject Wells Fargo's argument under the economic loss rule and deny the motion to dismiss.

**E. Plaintiffs sufficiently plead a claim for fraud.**

Plaintiff provided a specific factual basis for Wells Fargo's fraudulent omissions and misrepresentations that is sufficient to meet the heightened pleading standard. "To properly plead fraud with particularity under Rule 9(b), 'a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Wells Fargo argues that Plaintiff did not identify when the fraudulent communications were made, who made the fraudulent statement, or how the communications were made. Dkt. 6 at 16.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Plaintiff did provide the "who, what, when, where, and how" of Wells Fargo's fraud. Plaintiff's claim is that Wells Fargo placed borrowers into an unauthorized forbearance without their informed and legal consent. First Amended Compl. at ¶¶ 8, 14, 49-54. Plaintiff asserts that accounts were wrongfully placed into forbearance when borrowers logged into their Wells Fargo account, and that Wells Fargo made material omissions regarding the placement of these accounts into forbearance. *Id*. at ¶¶ 49-54, 76, 79, 87-88, 122-124. Plaintiff asserts that "how" Wells Fargo perpetrated this fraud was by placing accounts into forbearance with the click of a button that made no mention of forbearance. *Id.* at ¶ 13, 15, 123. Furthermore, while it was not necessary for Plaintiff to do so, Plaintiff also amended the Complaint to include additional claims about further deceptive and misleading statements made by Wells Fargo in form letters sent to Plaintiff and Class Members. Amended Complaint at ¶¶ 76, 79, 87-88, 124.

In addition, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247-48 (2d Cir. 1987)). Here, Plaintiff is not expected to have personal knowledge of *who* at Wells Fargo was responsible for telling borrowers that their mortgages were being put in forbearance or for sending the form letters to these customers—this information is within Wells Fargo's knowledge.

Wells Fargo also argues Plaintiff failed to allege facts showing Wells Fargo owed a duty to disclose, which it asserts is required for a claim of fraud by omission. Dkt. 6 at 26. Wells Fargo states, "Under Ohio law, a duty to disclose generally arises only where the parties are in a



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

fiduciary relationship . . . ." *Id.* (citing *Blon v. Bank One, Arkron, N.A.*, 519 N.E.2d 363, 367 (Ohio 1988)).

First, here, Plaintiff is alleging that a fiduciary relationship exists with Plaintiff and the Nationwide Military Class. *See* sec. III.A, *supra*. Therefore, Wells Fargo did have a duty to disclose.

Second, "[t]he existence of a fiduciary or other special relationship is not always required before a duty to disclose arises." *Word of God Church v. Stanley*, 2011-Ohio-2073, ¶ 26 (Ct. App.). Indeed, in the case cited by Wells Fargo, the court also identifies that a duty to disclose arises "where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Blon*, 519 N.E.2d at 367 (citations omitted). *See also Word of God Church*, 2011-Ohio-2073 at ¶ 26 (stating the same). The Ohio Supreme Court stated that "a party is under a duty to speak, and therefore liable for nondisclosure, if the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting . . . ." *State v. Warner*, 55 Ohio St. 3d 31, 54. Here, Plaintiff alleges that Wells Fargo's mislead the Plaintiff and class members as to its mortgage debt relief assistance program, which did not provide "assistance," but rather, placed Plaintiff's and class member's accounts into forbearance without their knowledge. First Amended Compl. at ¶ 15, 49-53, 73-75, 122-123, 190. Wells Fargo did not reveal the true extent of its COVID-19 relief program, thus defrauding its customers into enrolling into unwanted forbearances. Plaintiff alleges that he and the putative class members justifiably and reasonably relied upon Wells Fargo's omissions of fact, as they had no basis to assume that Wells Fargo would place their loans into forbearance without their authorization or informed consent. *Id.* at ¶¶ 125-126.

And third, Plaintiff's fraud claim is not premised only upon omissions by Wells Fargo. Rather, in the First Amended Complaint, Plaintiff also asserts that Wells Fargo made material



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

misleading and deceptive misrepresentations to Plaintiff and class members via form letters sent after placing their accounts into forbearance, which further mislead them as to the nature of the relief program. First Amended Compl. at ¶¶ 76, 79, 87-88, 124.

Plaintiff properly pleaded fraud with particularity and met the standard under Federal Rule of Civil Procedure 9(b).

**F. Wells Fargo violated the Truth in Lending Act ("TILA").**

Wells Fargo primarily argues that the TILA claim fails because Plaintiff has failed to allege that Wells Fargo is the lender. This argument is not well taken given that Wells Fargo is the lender and, in fact, it provided the court with the mortgage proving this. Dkt 7 at 6. This record shows, Wells Fargo is in fact Mr. Echard's lender, and includes terms Defendant breached. *Id*. Therefore, Defendant's arguments that TILA does not authorize a private cause of action against a loan servicer are inapposite. TILA explicitly creates a private cause of action against a "creditor." 15 U.S.C. § 1640(a). The term "creditor" is explicitly defined by TILA as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g). Wells Fargo cannot escape its clear liability under TILA to Plaintiff and class members for whom it is the creditor.

Plaintiff's complaint provided numerous specific factual allegations. As Defendants acknowledge, the complaint alleges that Wells Fargo failed to properly (1) apply payments to the mortgage; (2) report payments to credit agencies; or (3) calculate information on periodic payments. First Amended Compl. at ¶ 55, 133, 135, 137. Those are not mere regurgitations of



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

the TILA-implementing regulations, but factual allegations of specific required actions Wells Fargo failed to take. Plaintiff's First Amended Complaint, filed herewith, provides additional factual basis for the claims that Wells Fargo violated TILA and therefore there is no basis for dismissal.

**G. Plaintiffs sufficiently pled a claim for violations of RESPA**

Defendant seeks dismissal of Plaintiff's Real Estate Settlement Procedures Act ("RESPA") claims because, it argues, Plaintiff alleges that no loss mitigation or loan modification applications were ever made, which would implicate RESPA requirements, and because the complaint lacks sufficient factual detail. These arguments lack merit and Plaintiff is filing an Amended Complaint to clarify some of these issues. The Court should deny Defendant's motion.

First, the First Amended Complaint clarifies that although Plaintiff inquired about Defendant's forbearance program and never requested Defendant to place his mortgage into forbearance, Defendant inappropriately treated Plaintiff's inquiry as an application and enrolled him in the program. First Amended Compl. at ¶ 73, 75. The First Amended Complaint further alleges that in its handling of Plaintiff's inquiry as an application, Defendant failed to comply with the requirements of Regulation X, violating RESPA and subjecting Defendant to liability on that basis. *Id*. at ¶ 142. And, in the alternative, the First Amended Complaint alleges that, to the extent Plaintiff and the Class did submit one or more loss mitigation applications, Defendant violated Regulation X by failing to comply with RESPA's statutory and regulatory requirements for handling those applications. *Id*. Thus, Plaintiff has adequately stated claims under RESPA that plainly align with the facts of this case.

Under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny, the First Amended Complaint as a whole pleads sufficient facts supporting claims under RESPA.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Although the complaint "does not need detailed factual allegations," Plaintiff provides several. *Id*. at 555. For example, the First Amended Complaint goes into detail about how Defendant placed Plaintiff and other similarly situated mortgage customers into Defendant's COVID-19 mortgage forbearance program without notice or consent. First Amended Compl. at ¶ 15, 49-54, 75. Defendant did this automatically, despite customers taking no action to authorize or commence forbearance. *Id*. at 14, 49-54. The First Amended Complaint recounts how Plaintiff submitted an inquiry to Defendant to ask about payment deferment options out of concern for his financial security in light of the pandemic. *Id*. at ¶ 73. The complaint adds that Defendant responded to Plaintiff, directing Plaintiff to a website or mobile app for self-service options without providing any additional explanation or support. *Id*. at ¶ 74. Then, without Plaintiff taking any additional action on his account, Wells Fargo placed his account in forbearance. *Id*. at ¶ 75. In addition, the complaint states that when Plaintiff resumed payments on his mortgage, Defendant failed to properly apply those payments, report those payments, or calculate his mortgage information on subsequent periodic payments. *Id*. at ¶ 81. These facts sufficiently support Plaintiff's RESPA claims. Should Wells Fargo later attack the sufficiency of the First Amended Complaint, Plaintiff will respond.

**H. Plaintiffs sufficiently pled a claim for violations of FCRA**

Wells Fargo's motion to dismiss Plaintiff's claim under the Fair Credit Reporting Act ("FCRA") should be denied. Wells Fargo feigns confusion about which provision of the FCRA is relied upon. However, it is obvious from the context that the claim is brought under 15 U.S.C. § 1681s-2(b), since that is the section that provides a private right of action. Moreover, it is that section that involves Wells Fargo's duty to investigate after Plaintiff disputed the accuracy of credit reporting.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Under that section of the FCRA, after receiving notice of a dispute from the credit reporting agency, a furnisher must:

> (1) "conduct an investigation with respect to the disputed information"; (2) "review all relevant information provided by the [CRA]" in connection with the dispute; and (3) "report the results of the investigation to the [CRA]." . . . Should the investigation determine that the disputed information is "inaccurate or incomplete or cannot be verified," the furnisher must "as appropriate, based on the results of the reinvestigation promptly . . . modify [,] . . . delete [or] permanently block the reporting" of that information to CRAs.

*Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016) (internal citations omitted).

Defendants' sole argument for dismissal is that Plaintiff "fails to allege Wells Fargo received a notice of dispute regarding Plaintiff or the putative class members' reported information." Dkt. 6 at 30. However, this allegation is sufficiently plead in the complaint. The First Amended Complaint alleges that "Wells Fargo has breached its duties as set forth in 15 U.S.C. § 1681s-2 by failing to adequately investigate and fully correct inaccurate credit reporting information with the credit reporting agencies ***following Plaintiff's dispute of the credit reporting errors*** or Plaintiff's informing Wells Fargo of the fraudulent placement of the account in forbearance." First Amended Compl. at ¶ 157. Further, Plaintiff alleges that "Wells Fargo failed to promptly delete, modify, or block reporting of inaccurate, incomplete, or unverifiable information ***in response to each complaint*** raised by Plaintiff and the Class Members." *Id*. at ¶ 160. Finally, Plaintiff confirms that this cause of action is not about the initial reporting, but rather is about Wells Fargo's failure "to fully correct the information it supplied to the Credit Reporting Agencies" after complaints were filed. *Id*. at ¶ 161.

The assertion of a triggering complaint is sufficiently plead, but the First Amended Complaint makes it more explicit. There is no basis for dismissal.



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

**I. Plaintiff has adequately pled a claim for relief under the Ohio Deceptive Trade Practices Act ("ODTPA").**

Plaintiff has plead facts sufficient to support a claim under the ODTPA, the elements of which are: "(1) a false statement or statement that is misleading, (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience, (3) the deception is material in that it is likely to influence a purchasing decision, and (4) the plaintiff has been or is likely to be injured as a result." *Torrance v. Rom*, 2020-Ohio-3971, 157 N.E.3d 172, 188 (Ct. App.).

Wells Fargo asserts that reliance is also an element of an ODTPA claim, citing *First Choice Fed. Credit Union v. Wendy's Co.*, Civil Action No. 16-506, 2017 U.S. Dist. LEXIS 20754 at *14 (W.D. Pa. Feb. 13, 2017). The court there explains that Ohio courts look to the Lanham Act to interpret the ODTPA, stating, "Proximate cause is a requirement of cause of action for violation of the Lanham Act, thus a plaintiff seeking relief under the ODTPA must allege reliance on the alleged misrepresentation which flowed directly into injury." *Id*. (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 1391 (2014)). As far as Plaintiffs are aware, the *First Choice Federal Credit Union* case is the only case in which a court states that reliance is an element of an ODTPA claim. And indeed, the *Lexmark* case cited by the *First Choice Federal Credit Union* court for this principle does not hold that reliance is required. Rather, the *Lexmark* case sets forth the "proximate-cause requirement," stating, "We thus hold that a plaintiff suing under [the Lanham Act] ordinarily must show economic or reputational injury flowing directly from the deception wrought by defendant's advertising." *Id.* at 133. Reliance and proximate cause are not equivalent. Reliance is only one way in which plaintiffs can show proximate cause. *See e.g. Wallace v. Midwest Fin. & Mortg. Servs.*, 714 F.3d 414, 420 (6th Cir. 2013) (finding that "[f]or RICO purposes, reliance and



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

proximate cause remain distinct – if frequently overlapping – concepts. While reliance is often used to prove the element of causation, that does not mean it is the only way to do so, nor does that transform reliance itself into an element of the cause of action."); *Baughman v. State Farm Mut. Auto. Ins. Co.*, 2005-Ohio-6980 (Ct. App.) ("Under Ohio law, 'reliance' and 'increased risk of harm' are alternative means of establishing proximate cause . . . .").

This Court need not reach the question of whether reliance is an element of an ODTPA claim at this time, because Plaintiff has sufficiently pled the necessary facts in this case regardless of whether reliance is required, and Plaintiff's First Amended Complaint provides further clarity on this cause of action. In the case cited by Wells Fargo, *First Choice Federal Credit Union*, the court refused to dismiss plaintiffs' ODTPA claim. There, plaintiffs alleged that defendant was violating the ODTPA via a misrepresentation regarding the level of security on their credit card system, and that plaintiffs were damages "as a direct and proximate result" of the misrepresentation, identifying the alleged damages they incurred. *First Choice Fed. Credit Union*, 2017 U.S. Dist. LEXIS 20754 at *14. The court found that "[a]t this early stage of this litigation, these allegations are sufficient to advance a plausible claim for violation of the ODTPA." *Id*. at *14-15.

Here, Plaintiff alleges that Wells Fargo violated the ODTPA by misrepresenting the services available for mortgage debt assistance. First Amended Compl. at ¶¶ 189-191. Plaintiff alleges that he logged onto Wells Fargo's website which caused his account to be unwittingly placed into forbearance, which he would not have knowingly done, and that as person with VA backed loan, he knew there were other forms of relief and assistance available to him besides placing the account into forbearance. *Id*. at ¶ 75. Plaintiff further alleges that he and the Ohio class members relied upon Wells Fargo's deceptive misrepresentations regarding mortgage relief services on Wells Fargo's website. *Id*. at ¶ 192. And finally, Plaintiff alleges that he and the class



SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

members suffered damages "[a]s a direct and proximate result of Wells Fargo's deceptive practices." *Id.* at ¶ 193. Accordingly, this Court should refuse to dismiss Plaintiff's ODTPA claim.

## IV. CONCLUSION

For the reasons stated herein, the Court should deny Wells Fargo's motion to dismiss.

RESPECTFULLY SUBMITTED this 3rd day of May, 2021.

SMITH & LOWNEY, PLLC

By: *s/Knoll Lowney*
Knoll Lowney, WSBA # 23457
*s/Alyssa Koepfgen*
Alyssa Koepfgen, WSBA #46773
*s/Meredith Crafton*
Meredith Crafton, WSBA # 46558
*s/Marc Zemel*
March Zemel, WSBA #44325
*s/Savannah Rose*
Savannah Rose, WSBA #57062
Smith & Lowney, PLLC
2317 E. John Street, Seattle, WA 98112
Tel: (206) 860-2883; Fax: (206) 860-4187
Email: knoll@smithandlowney.com
alyssa@smithandlowney.com
meredith@smithandlowney.com
marc@smithandlowney.com
savannah@smithandlowney.com