The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| BRIAN ECHARD, on behalf of himself and all others similarly situated, | NO.  2:21-cv-00112-JCC |
| Plaintiffs, | DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT |
| v. | |
| WELLS FARGO BANK, N.A., and WELLS FARGO & CO., | |
| Defendants. | |

Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), through its undersigned counsel and pursuant to the Federal Rules of Civil Procedure, answers the First Amended Complaint ("Complaint") of Brian Echard ("Plaintiff"). Wells Fargo denies all allegations in the Complaint that Wells Fargo does not expressly admit in this Answer.

Wells Fargo responds to the specific allegations in the enumerated paragraphs in the First Amended Complaint and asserts its additional defenses as follows:

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT - 1
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

## I. INTRODUCTION

1.      The allegations in Paragraph 1 of the Complaint are Plaintiff's characterization of this action and opinions of Wells Fargo's forbearance program, to which no response is required. To the extent that a response is required, the allegations in Paragraph 1 are denied.

2.      The allegations in Paragraph 2 of the Complaint are denied.

3.      The allegations in Paragraph 3 of the Complaint are admitted.

4.      The allegations in Paragraph 4 of the Complaint are admitted.

5.      The allegations in Paragraph 5 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

6.      The allegations in Paragraph 6 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law they are denied. The remaining allegations in Paragraph 6 purport to characterize Wells Fargo's website, to which no response is required. To the extent these allegations are inconsistent with Wells Fargo's website, they are denied.

7.      Wells Fargo admits that because of the COVID-19 pandemic, military borrowers, along with many other borrowers, may have faced financial hardships through no fault of their own. The remaining allegations in Paragraph 7 purport to summarize Wells Fargo's alleged services to military borrowers, to which no response is required. To the extent these allegations are inconsistent with Wells Fargo's services offered to military borrowers, they are denied.

8.      The allegations in Paragraph 8 of the Complaint are denied.

9.      The allegations in Paragraph 9 of the Complaint are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 2
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

10.     The allegations in Paragraph 10 of the Complaint are Plaintiff's characterization of this action and his opinions regarding Wells Fargo's forbearance program, to which no response is required. To the extent that a response is required, the allegations in Paragraph 10 related to Wells Fargo's forbearance program are denied. The remaining allegations in Paragraph 10 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

11.     The allegations in Paragraph 11 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

12.     The allegations in Paragraph 12 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

13.     The allegations in Paragraph 13 of the Complaint purport to summarize CFPB commentary or guidance, to which no response is required. To the extent the allegations in Paragraph 13 of the Complaint are inconsistent with that commentary or guidance, they are denied.

14.     The allegations in Paragraph 14 of the Complaint are Plaintiff's characterization and opinion regarding Wells Fargo's forbearance program, to which no response is required. To the extent that a response is required, the allegations in Paragraph 14 are denied. Further, the allegations in Paragraph 14 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 3
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

15.     The allegations in Paragraph 15 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

16.     The allegations in Paragraph 16 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

17.     The allegations in Paragraph 17 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

18.     The allegations in Paragraph 18 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, to the extent the allegations in Paragraph 18 of the Complaint are inconsistent with Wells Fargo's payment application, credit reporting, and account servicing, Wells Fargo denies these allegations.

19.     The allegations in Paragraph 19 of the Complaint are Plaintiff's characterization and opinions regarding Wells Fargo's forbearance program, to which no response is required. To the extent that a response is required, the allegations of Paragraph 19 of the Complaint are denied.

20.     The allegations in Paragraph 20 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 4
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

21.     The allegations in Paragraph 21 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

22.     The allegations in Paragraph 22 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

23.     The allegations in Paragraph 23 of the Complaint are Plaintiff's characterization and opinion regarding Wells Fargo's forbearance program, to which no response is required. To the extent that a response is required, the allegations in Paragraph 23 are denied. Further, the allegations in Paragraph 23 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

24.     The allegations in Paragraph 24 purport characterize two news articles, to which no response is required. To the extent the allegations in Paragraph 24 of the Complaint are inconsistent with the news articles, they are denied.

## II.  JURISDICTION AND VENUE

25.     The allegations in Paragraph 25 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 5
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

26.    The allegations in Paragraph 26 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

27.    The allegations in Paragraph 27 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

28.    The allegations in Paragraph 28 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

29.    The allegations in Paragraph 29 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

## III. PARTIES

30.    Wells Fargo lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint regarding Plaintiff's residence. Wells Fargo is informed and believes, however, that Plaintiff is domiciled in Ohio based on his prior loan with Wells Fargo.

31.    The allegations in Paragraph 31 of the Complaint are denied. Wells Fargo no longer services Plaintiff's mortgage as Plaintiff paid off his loan in full in March 2021.  A true and accurate Certified copy of the Release of Mortgage is attached as **Exhibit A**.

32.    The allegations in Paragraph 32 of the Complaint are denied.  Ex. A.

33.    Wells Fargo admits that it is a wholly owned subsidiary of Wells Fargo & Co. Wells Fargo further admits that it is headquartered in South Dakota and that it conducts business

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 6
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

in the state of Washington. The remaining allegations in Paragraph 33 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

## IV. FACTUAL ALLEGATIONS

**A.    Wells Fargo Provides Special Programs and Promises to Military Borrowers.**

34.     To the extent the allegations in Paragraph 34 of the Complaint are a characterization of Wells Fargo's business practices, no response is required. Further, the allegations in Paragraph 34 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

35.     The allegations in Paragraph 35 purport to summarize two of Wells Fargo's web pages, to which no response is required. To the extent the allegations in Paragraph 35 of the Complaint are inconsistent with Wells Fargo's web pages, they are denied.

36.     The allegations in Paragraph 36 purport to characterize Wells Fargo's web page, to which no response is required. To the extent the allegations in Paragraph 36 of the Complaint are inconsistent with Wells Fargo's web pages, they are denied.

37.     The allegations in Paragraph 37 purport to characterize Wells Fargo's web page, to which no response is required. To the extent the allegations in Paragraph 37 of the Complaint are inconsistent with Wells Fargo's web pages, they are denied.

38.     The allegations in Paragraph 38 purport to characterize two of Wells Fargo's web pages, to which no response is required. To the extent the allegations in Paragraph 38 of the Complaint are inconsistent with both of Wells Fargo's web pages, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 7
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

**B.     Military Borrowers are Entitled to Special Legal Protections.**

39.     The allegations in Paragraph 39 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

40.     The allegations in Paragraph 40 of the Complaint purport to summarize VA guidance, to which no response is required. To the extent the allegations in Paragraph 40 of the Complaint are inconsistent with that commentary or guidance, they are denied.

41.     The allegations in Paragraph 41 of the Complaint purport to summarize VA guidance, to which no response is required. To the extent the allegations in Paragraph 41 of the Complaint are inconsistent with that commentary or guidance, they are denied.

**C.     The CARES Act.**

42.     The allegations in Paragraph 42 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

43.     The allegations in Paragraph 43 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 8
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

44.     The allegations in Paragraph 44 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

45.     The allegations in Paragraph 45 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

46.     The allegations in Paragraph 46 of the Complaint purport to summarize CFPB guidance, to which no response is required. To the extent the allegations in Paragraph 46 of the Complaint are inconsistent with that guidance, they are denied.

47.     The allegations in Paragraph 47 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

48.     The allegations in Paragraph 48 of the Complaint purport to summarize a news article concerning Wells Fargo, to which no response is required. To the extent the allegations in Paragraph 48 of the Complaint are inconsistent with the news article or the purported testimony by Wells Fargo as set forth in the news article, they are denied.

**D.     Wells Fargo Unilaterally and/or Without Informed Consent Opted Homeowners into its Forbearance Program.**

49.     The allegations in Paragraph 49 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 9
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

50.    The allegations in Paragraph 50 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

51.    The allegations in Paragraph 51 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, the allegations in Paragraph 51 of the Complaint purport to summarize complaints filed with the CFPB, to which no response is required. To the extent the allegations in Paragraph 51 of the Complaint are inconsistent with the complaints filed with the CFPB, they are denied.

52.    The allegations in Paragraph 52 of the Complaint purport to summarize a complaint filed with the CFPB, to which no response is required. To the extent the allegations in Paragraph 52 of the Complaint are inconsistent with the complaint filed with the CFPB, they are denied.

53.    The allegations in Paragraph 53 of the Complaint purport to summarize a news article concerning Wells Fargo, to which no response is required. To the extent the allegations in Paragraph 53 of the Complaint are inconsistent with the news article or the purported testimony by Wells Fargo as set forth in the news article, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 10
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

54.     The allegations in Paragraph 54 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

**E.     Wells Fargo Failed to Properly Manage Mortgages Once in Forbearance.**

55.     The allegations in Paragraph 55 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

**F.     Wells Fargo Benefits Financially from its Practice of Unilaterally Opting Homeowners into its Forbearance Program.**

56.     The allegations in Paragraph 56 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

57.     The allegations in Paragraph 57 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

58.     The allegations in Paragraph 58 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 11
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

59.     The allegations in Paragraph 59 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

60.     The allegations in Paragraph 60 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

61.     The allegations in Paragraph 61 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

## G.     Unwanted Forbearance Injures Consumers.

62.     The allegations in Paragraph 62 of the Complaint purport to summarize a news article concerning Wells Fargo, to which no response is required. To the extent the allegations in Paragraph 62 of the Complaint are inconsistent with the news article, they are denied.

63.     The allegations in Paragraph 63 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

64.     The allegations in Paragraph 64 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, the allegations in Paragraph 64 of the Complaint purport to

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 12
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

summarize a news article concerning Wells Fargo, to which no response is required. To the extent the allegations in Paragraph 64 of the Complaint are inconsistent with the news article, they are denied.

65.     The allegations in Paragraph 65 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

66.     The allegations in Paragraph 66 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

67.     The allegations in Paragraph 67 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied. Further, Wells Fargo is without sufficient knowledge and/or information to form a belief as to the truth of the allegations in Paragraph 67 related to individuals noticing a decline in their credit scores, and therefore denies the same.

**H.     Plaintiff Brian Echard.**

68.     The allegations in Paragraph 68 of the Complaint are denied.  Ex. A.

69.     The allegations in Paragraph 69 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. By way of further response, Plaintiff obtained his loan (the "Note") with Wells Fargo on September 20, 2016. A true and accurate copy of the Note is attached as **Exhibit B**. Further, Plaintiff's Note was secured by a mortgage (the "Mortgage") that Plaintiff signed on

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 13
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

September 20, 2016. A true and accurate copy of the Mortgage is attached as **Exhibit C**.

70.     Wells Fargo is without sufficient knowledge and/or information to form a belief as to the truth of the allegations in Paragraph 70 of the Complaint, and therefore denies the same.

71.     Wells Fargo admits that Plaintiff's loan was a VA backed mortgage.

72.     The allegations in Paragraph 72 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

73.     The allegations in Paragraph 73 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

74.     The allegations in Paragraph 74 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

75.     The allegations in Paragraph 75 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Plaintiff knowingly agreed to a forbearance of his mortgage payments.

In response to the COVID-19 pandemic, Wells Fargo introduced an online form on its website that enabled eligible customers to request COVID-19 forbearance assistance from their Wells Fargo account online. A customer first needed to log into his or her account (including

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 14
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

entering the correct username and password) in order to request COVID-19 forbearance assistance online.  Exemplar copies of the buttons and screens relating to customer requests for COVID-19 forbearance assistance as of April 1, 2020 are attached as **Exhibit D**.

Wells Fargo admits that Plaintiff logged into his Wells Fargo account on the Wells Fargo website on April 1, 2020.  On April 1, 2020, the first screen that appeared after a customer logged into his or her account displayed certain buttons related to COVID-19 assistance available to that customer.  Ex. D, p. 2.  On that screen is a yellow yield sign button with the text "Need payment assistance due to COVID-19? Request a payment suspension." *Id.*

If, and only if, a customer clicked on the "Begin Request" button, the customer would then be directed to the "COVID-19 Loan Assistance Request" screen.  Ex. D, p. 4.  This screen had three radio buttons on the side that could be "checked" and a set of "Cancel" or "Submit" buttons at the bottom that could be "clicked." *Id.* Each radio button corresponded to a different acknowledgement or term: (a) "I have a financial hardship because of COVID-19 (Coronavirus)"; (b) "I am requesting payment suspension for this account"; and (c) "I consent to allow Wells Fargo to contact me on my mobile (or other) phone through an automatic dialing system (Optional)." *Id.*

To obtain a forbearance, a customer had to select the first two radio buttons described in the preceding sentence (as the third was optional) and select "submit" before the customer's account was placed in payment suspension (forbearance).  If the customer so elected, he or she would then be directed to a confirmation screen, which advised that the customer would "receive a confirmation letter in the mail in the next 7 to 10 days." Ex. D, p. 5.

In total, a customer would need to selectively click at least four different buttons (or more if a customer requested assistance for multiple accounts) before successfully completing a request for COVID-19 forbearance assistance through his or her online account.  Wells Fargo tracks and

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 15
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

stores details related to each COVID-19 forbearance assistance request submitted online by customers as part of a daily process (including on April 1, 2020) to ensure that Wells Fargo processes all requests for COVID-19 forbearance assistance that it receives.

So, if, and only if, a customer clicked through all of the screens described above, including the two required radio buttons affirming "financial hardship" and "requesting payment suspension," and then also clicked "Submit," Wells Fargo's front-end platform would contemporaneously record and publish coding (corresponding to the customer's button selections and account settings) to its database. On a nightly basis, this coding from Wells Fargo's database is processed for all requesting accounts into the mortgage servicing system of record for the account.

Among other things, the information recorded includes the date and time of the request (under the "DT" column); the loan number (under the "Loan Number" column); and the coding corresponding to the above-described radio buttons that were selected (radio button "(a)" was recorded under the "COVID Impact" column; radio button "(b)" was recorded under the "Mortgage Assistance" column; and radio button "(c)" was recorded under the "Consent to Contact" column). A true and accurate copy of Plaintiff's Online Banking Data is attached hereto as **Exhibit E**.

As evidenced by the "DT" column, Plaintiff completed his COVID-19 Loan Assistance Request on April 1, 2020, at 3:54 P.M. Further, the "COVID Impact," "Mortgage Assistance," and "Consent to Contact" columns contain coding that shows Plaintiff selected both radio buttons (a) and (b), but did not select radio button (c) before clicking "Submit" on his COVID-19 forbearance request. Ex. E. Wells Fargo's business records, created and maintained in the ordinary course of business, prove that Plaintiff voluntarily elected the forbearance, that he did so after

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 16
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

being informed, and that Plaintiff made four independent selections (i.e. "clicks") on the screens demonstrating his informed consent.  Wells Fargo can show what Plaintiff saw, what he did, and when he did it down to the minute—Plaintiff submitted his COVID-19 forbearance request on April 1, 2020 at 3:54 P.M.  Ex. E.

76.    Wells Fargo admits that it sent Plaintiff a letter dated April 8, 2020.  A true and accurate copy of April 8, 2020 Letter is attached as **Exhibit F**.  Wells Fargo denies the allegations in Paragraph 76 of the Complaint that Wells Fargo's April 8, 2020 Letter "was designed to be misleading," that Plaintiff "never informed Wells Fargo of a financial hardship or gave Wells Fargo any financial information," and that Plaintiff "never gave Wells Fargo information about his ability to pay."

As evidenced above, Plaintiff logged into his Wells Fargo account on April 1, 2020, and submitted a COVID-19 Loan Assistance Request after being informed and affirming his consent through multiple selections.  Ex. D & E.  Plaintiff informed Wells Fargo that he was having a financial hardship due to COVID-19 and requested that Wells Fargo suspend his mortgage payments for three months.  Wells Fargo's April 8, 2020 Letter recited the terms of the forbearance Plaintiff agreed to on April 1, 2020.  Ex. F.

In the April 8, 2020 Letter, Wells Fargo confirmed the "short-term payment relief" for Plaintiff's account and reminded Plaintiff that if finds he does not need the payment relief, he "can continue to make the payments as normal and no further action is needed." Ex. F, p. 1. The April 8, 2020 Letter informed Plaintiff that his required payments for April 2020, May 2020, and June 2020 would be $0 and Plaintiff would need to resume his "regular mortgage payment schedule beginning on July 1, 2020." Ex. F, p. 1 & 4.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 17
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

The April 8, 2020 Letter also informed Plaintiff that at the end of his forbearance, Wells Fargo would work with him on how to handle the suspended payments and stated his options "may include: A continuation of the payment suspension. Moving the missed payments to end of the loan. [or] A modification." Ex. F, p. 1-2.  The April 8, 2020 Letter further informed Plaintiff that his statements would "show past-due during this relief period" and that Plaintiff would "receive required notices about overdue payments."  The April 8, 2020 Letter stated that if Plaintiff wanted to "request information, notify [Wells Fargo] of an error, or share any concerns [Plaintiff] may have about the servicing of this account," Plaintiff could contact Wells Fargo.

After his receipt of the April 8, 2020 Letter, Plaintiff did not contact Wells Fargo to express any concerns about his forbearance. Plaintiff understood that his payment obligations had been suspended for three months as he had requested by submitting the COVID-19 Loan Assistance Request, as evidenced by the fact that Plaintiff did not make another payment until August of 2020.

77.     The allegations in Paragraph 77 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.  Wells Fargo is without sufficient knowledge and/or information to form a belief as to the truth of the allegations in Paragraph 77 related to Plaintiff's alleged attempt to refinance his mortgage in July 2020, and therefore denies the same.  Wells Fargo denies that July 21, 2020 was the date Plaintiff "learned he was in forbearance."  As evidenced above, Plaintiff logged into his Wells Fargo account on April 1, 2020, submitted a COVID-19 Loan Assistance Request, and Wells Fargo sent him a letter confirming his request for forbearance on April 8, 2020. Ex. D-F.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 18
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

The April 8, 2020 letter stated Plaintiff's payments would resume on July 1, 2020. Ex. F, p. 1. Accordingly, on July 2, 2020, Wells Fargo sent Plaintiff a letter (the "July 2, 2020 Letter") inquiring whether Plaintiff planned to resume his mortgage payments following his forbearance and requesting that Plaintiff contact Wells Fargo right away to discuss payment options. A true and accurate copy of the July 2, 2020 Letter is attached as **Exhibit G**.

The July 2, 2020 Letter included information to assist Plaintiff with making up his missed payments, including details about possible repayment plans, deferred payments, or loan modifications. Ex. F, p. 3. Thereafter, Plaintiff contacted Wells Fargo about repayment options and on July 22, 2020, Wells Fargo sent Plaintiff a letter (the "July 22, 2020 Letter") offering him a loan modification. A true and accurate copy of the July 22, 2020 Letter is attached as **Exhibit H**.

In the July 22, 2020 Letter, Wells Fargo stated "Thank you for connecting with us. We understand that this has been a difficult time, and we hope that suspending your mortgage payments has been helpful for you." Ex. H, p. 1. This Letter confirmed that Wells Fargo would be moving Plaintiff's missed payments to the end of his loan and offered Plaintiff a "trial period monthly mortgage payment" of $1,576.75. *Id.* If Plaintiff accepted the offer, he would be required to make three payments of the trial period monthly mortgage payment. *Id.* at 1-2. Wells Fargo would then finalize Plaintiff's modified loan terms after Plaintiff successfully completed the trial plan. *Id.* at 5.

Following the July 22, 2020 offer letter from Wells Fargo, Plaintiff made the three trial-period monthly mortgage payments. On October 31, 2020, Wells Fargo sent Plaintiff a letter (the "October 31, 2020 Letter") stating that Plaintiff was approved for a loan modification. A true and accurate copy of the October 31, 2020 Letter is attached as **Exhibit I**.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 19
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

In addition to bringing Plaintiff's account current, the loan modification changed Plaintiff's contractual due date to December 1, 2020, changed his maturity date to February 1, 2047, reduced his interest rate to 3.2500%, and set his monthly payment amount at $1,576.85. Ex. I, p. 2. On November 16, 2020, Plaintiff executed and returned the Loan Modification Agreement to Wells Fargo. A true and accurate copy of the executed Loan Modification Agreement is attached as **Exhibit J**.

Plaintiff's allegations that he was unaware of his forbearance are disingenuous at best because, because as evidenced above, Plaintiff knowingly requested the forbearance, Plaintiff did not make any payments for three months in accordance with the forbearance, Plaintiff requested and received a loan modification offer after declining to extend the forbearance, Plaintiff completed the trial payments for the loss mitigation assistance he requested, and then Plaintiff received and signed the Loan Modification Agreement.  Plaintiff benefited from the loan modification because he then paid off his loan in full on March 10, 2021.  The evidence clearly demonstrates that Plaintiff requested payment assistance and Wells Fargo provided that assistance to Plaintiff's benefit.

78.     The allegations in Paragraph 78 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.  Wells Fargo admits that it sent Plaintiff a letter dated August 14, 2020 (the "August 14, 2020 Letter").  A true and accurate copy of the August 14, 2020 Letter is attached as **Exhibit K**.

79.     In response to the allegations in Paragraph 79 of the Complaint, Wells Fargo denies that its August 14, 2020 Letter is "designed to be misleading" or "conflicting and confusing."

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 20
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

Wells Fargo admits that the August 14, 2020 Letter stated "You do not need to contact us as there is nothing for you to do right now. You are not required to make any payments during the forbearance. We will contact you near the end of the forbearance to review your financial situation and discuss options." Ex. K. Wells Fargo also admits that the August 14, 2020 Letter stated that Plaintiff's account was "due for 4 payment(s) for the months of May 1, 2020 through August 14, 2020 .... The loan is currently due for May 1, 2020 and due for each subsequent monthly payment since that date." *Id.*

As of August 14, 2020, Plaintiff was currently due for the May 1, 2020 payment pursuant to the forbearance he requested and because Plaintiff did not accept the loan modification until November 16, 2020, which brought his loan current. As of August 14, 2020, there was "nothing for [Plaintiff] to do right now" because he was currently making payments pursuant to the trial period monthly payment, i.e. the loss mitigation assistance he requested, as set forth in the July 22, 2020 Letter. Ex. H. The August 14, 2020 Letter provided Plaintiff information about his current account status. Ex. K.

80.    Wells Fargo denies the allegations in Paragraph 80 of the Complaint that Plaintiff "never agreed to short term assistance." As evidenced above, Plaintiff knowingly requested and agreed to forbearance of his mortgage payments. Wells Fargo admits that it sent a letter to Plaintiff dated September 9, 2020 (the "September 9, 2020 Letter"). A true and accurate copy of the September 9, 2020 Letter is attached as **Exhibit L**. Wells Fargo denies that the September 9, 2020 Letter contains inconsistencies. In the September 9, 2020 Letter, Wells Fargo stated, "The account has continued to report as current on your credit report even during the payment suspension plan. We have also provided the credit bureaus with a comment code that says the account is in a

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 21
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

forbearance plan. FICO has advised us that this 'account in forbearance' code does not affect your FICO score." Ex. L, p. 2.

Wells Fargo further explained that "The credit bureaus have independent credit score models" and Wells Fargo could not "speculate how any of [the credit bureaus] proprietary models account for this code" and that if Plaintiff applied "for credit whole on a forbearance plan, the lender will see the 'account in forbearance' comment on [his] credit report, and the fact that [his] account is in forbearance may affect [his] ability to qualify for new credit or refinance. Ex. L, p. 3. Wells Fargo's September 9, 2020 Letter provided Plaintiff information explaining how FICO had advised Wells Fargo about the "account in forbearance" code and that Wells Fargo was not in control of the credit bureaus or how third parties may interpret the credit bureaus' reporting. *Id.* Wells Fargo's reporting of Plaintiff's account was accurate because it reflected an account status of "current" along with a comment code that Plaintiff's account was in forbearance (as Plaintiff requested), which Wells Fargo confirmed and explained to Plaintiff in the September 9, 2020 Letter. *Id.*

81.    The allegations in Paragraph 81 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

82.    The allegations in Paragraph 82 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 22
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

83.     The allegations in Paragraph 83 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

84.     The allegations in Paragraph 84 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

85.     The allegations in Paragraph 85 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

86.     Wells Fargo is without sufficient knowledge and/or information to form a belief as to the truth of the allegations in Paragraph 86 related to Plaintiff's credit score, and therefore denies the same.

87.     Wells Fargo is without sufficient knowledge and/or information to form a belief as to the truth of the allegations in Paragraph 87 related to Plaintiff's qualification for the best refinancing rates, and therefore denies the same. The remaining allegations in Paragraph 87 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

88.     The allegations in Paragraph 88 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 23
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

**I.     Class Action Allegations.**

89.     The allegations in Paragraph 89 of the Complaint are a characterization of this action to which no response is required. Further, Wells Fargo denies there is any basis for recovery by Plaintiff individually or on behalf of a purported class. Further, the allegations in Paragraph 89 contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied. Further, Wells Fargo denies that a class is certifiable in this case and, therefore, denies that there are any members of a class as defined in the unenumerated paragraphs immediately following Paragraph 89 of the Complaint.

90.     <u>Numerosity</u> - The allegations in Paragraph 90 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, Wells Fargo denies that a class is certifiable in this case. Further, the allegations in Paragraph 90 of the Complaint purport to summarize a news article concerning Wells Fargo, to which no response is required. To the extent the allegations in Paragraph 90 of the Complaint are inconsistent with the news article, they are denied.

91.     The allegations in Paragraph 91 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied. Further, Wells Fargo denies that it "extensively and harmfully misapplied" "multiple federal statutes" as alleged in Paragraph 91 of the Complaint.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 24
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

92.     <u>Commonality</u> - Wells Fargo denies the allegations in Paragraph 92 of the Complaint, including subparagraphs a. through e. Wells Fargo denies that a class is certifiable in this case.

93.     <u>Typicality</u> - Wells Fargo denies that Plaintiff or anyone similarly situated is qualified to represent a putative class of plaintiffs. Wells Fargo denies that Plaintiff's purported claims are typical of any of the putative class members. Wells Fargo denies that a class is certifiable in this case.

94.     <u>Adequacy</u> - Wells Fargo denies that Plaintiff or anyone similarly situated is qualified to represent a putative class of plaintiffs. Wells Fargo denies that a class is certifiable in this case.

95.     <u>Predominance and Superiority</u> - The allegations in Paragraph 95 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

96.     The allegations in Paragraph 96 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

## V.  CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

### Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

97.     Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 25
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

98.     The allegations in Paragraph 98 of the Complaint are a characterization of this action, to which no response is required.

99.     The allegations in Paragraph 99 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

100.    The allegations in Paragraph 100 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

101.    The allegations in Paragraph 101 of the Complaint are denied.

102.    The allegations in Paragraph 102 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, Wells Fargo denies that it breached the Mortgage.

103.    The allegations in Paragraph 103 of the Complaint are denied.

104.    The allegations in Paragraph 104 of the Complaint are denied.

105.    The allegations in Paragraph 105 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

106.    The allegations in Paragraph 106 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 26
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

107. The allegations in Paragraph 107 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

108. The allegations in Paragraph 108 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

109. The allegations in Paragraph 109 of the Complaint are denied.

110. The allegations in Paragraph 110 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

111. The allegations in Paragraph 111 of the Complaint are denied.

112. The allegations in Paragraph 112 of the Complaint are denied.

113. The allegations in Paragraph 113 of the Complaint are denied.

114. The allegations in Paragraph 114 of the Complaint are denied.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

115. Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 27
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

116.    The allegations in Paragraph 116 of the Complaint are a characterization of this action, to which no response is required.

117.    The allegations in Paragraph 117 of the Complaint are denied.

118.    The allegations in Paragraph 118 of the Complaint, including the unenumerated subparagraphs following Paragraph 118, contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

119.    The allegations in Paragraph 119 of the Complaint are denied.

## THIRD CAUSE OF ACTION

### Fraud

120.    Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

121.    The allegations in Paragraph 121 of the Complaint are a characterization of this action, to which no response is required.

122.    The allegations in Paragraph 122 of the Complaint are denied.

123.    The allegations in Paragraph 123 of the Complaint are denied.

124.    The allegations in Paragraph 124 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

125.    The allegations in Paragraph 125 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 28
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

126.   The allegations in Paragraph 126 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

127.   The allegations in Paragraph 127 of the Complaint are denied.

## FOURTH CAUSE OF ACTION

### Violations of Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA)

128.   Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

129.   The allegations in Paragraph 129 of the Complaint are a characterization of this action, to which no response is required.

130.   The allegations in Paragraph 130 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

131.   The allegations in Paragraph 131 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

132.   The allegations in Paragraph 132 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

133.   The allegations in Paragraph 133 of the Complaint contain statements and

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 29
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied. Further, Wells Fargo denies the allegations in Paragraph 133 of the Complaint that "Wells Fargo failed to properly apply [Plaintiff's] mortgage payments to his account after he resumed payments on his mortgage in August 2020."

134. The allegations in Paragraph 134 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

135. The allegations in Paragraph 135 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

136. The allegations in Paragraph 136 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

137. The allegations in Paragraph 137 of the Complaint are denied.

138. The allegations in Paragraph 138 of the Complaint are denied.

## **FIFTH CAUSE OF ACTION**

### **Violations of the Real Estate Settlement Procedures Act (RESPA)**

139. Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

140. The allegations in Paragraph 140 of the Complaint are a characterization of this action, to which no response is required.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 30
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

141.    The allegations in Paragraph 141 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

142.    The allegations in Paragraph 142 of the Complaint, including the unenumerated subparagraphs following Paragraph 142, are denied.

143.    The allegations in Paragraph 143 of the Complaint are denied.

144.    The allegations in Paragraph 144 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

145.    The allegations in Paragraph 145 of the Complaint are denied.

146.    The allegations in Paragraph 146 of the Complaint are denied.

## SIXTH CAUSE OF ACTION

**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA)**

147.    Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

148.    The allegations in Paragraph 148 of the Complaint are a characterization of this action, to which no response is required.

149.    The allegations in Paragraph 149 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied

150.    The allegations in Paragraph 150 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 31
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

151.    The allegations in Paragraph 151 of the Complaint are denied.

152.    The allegations in Paragraph 152 of the Complaint are denied.

153.    The allegations in Paragraph 153 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

154.    The allegations in Paragraph 154 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

155.    The allegations in Paragraph 155 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

156.    The allegations in Paragraph 156 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

157.    The allegations in Paragraph 157 of the Complaint are denied.

158.    The allegations in Paragraph 158 of the Complaint are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 32
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

159.     The allegations in Paragraph 159 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

160.     The allegations in Paragraph 160 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

161.     The allegations in Paragraph 161 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

162.     The allegations in Paragraph 162 of the Complaint are denied.

163.     The allegations in Paragraph 163 of the Complaint are denied.

164.     The allegations in Paragraph 164 of the Complaint are denied.

165.     The allegations in Paragraph 165 of the Complaint are denied.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

166.     Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

167.     The allegations in Paragraph 167 of the Complaint are a characterization of this action, to which no response is required.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 33
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

168.    The allegations in Paragraph 168 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

169.    The allegations in Paragraph 169 of the Complaint are denied.

## EIGHTH CAUSE OF ACTION

### Negligence and Negligent Misrepresentation

170.    Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

171.    The allegations in Paragraph 171 of the Complaint are a characterization of this action, to which no response is required.

172.    The allegations in Paragraph 172 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

173.    The allegations in Paragraph 173 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

174.    The allegations in Paragraph 174 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

175.    The allegations in Paragraph 175 of the Complaint are denied.

176.    The allegations in Paragraph 176 of the Complaint are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 34
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

177.    The allegations in Paragraph 177 of the Complaint are denied.

178.    The allegations in Paragraph 178 of the Complaint are denied.

179.    The allegations in Paragraph 179 of the Complaint are denied.

180.    The allegations in Paragraph 180 of the Complaint are denied.

181.    The allegations in Paragraph 181 of the Complaint are denied.

182.    The allegations in Paragraph 182 of the Complaint are denied.

183.    The allegations in Paragraph 183 of the Complaint are denied.

## NINTH CAUSE OF ACTION

### Violation of the Ohio Deceptive Trade Practices Act

184.    Wells Fargo incorporates its answers to the allegations contained in the foregoing paragraphs as though fully set forth herein.

185.    The allegations in Paragraph 185 of the Complaint are a characterization of this action, to which no response is required.

186.    The allegations in Paragraph 186 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

187.    The allegations in Paragraph 187 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

188.    The allegations in Paragraph 188 of the Complaint contain statements and conclusions of law to which no response is required. To the extent the allegations are contrary to the law, they are denied.

189.    The allegations in Paragraph 189 of the Complaint are denied.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 35
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

190.    The allegations in Paragraph 190 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

191.    The allegations in Paragraph 191 of the Complaint are denied.

192.    The allegations in Paragraph 192 of the Complaint contain statements and conclusions of law to which no response is required, and/or refer to documents which speak for themselves. To the extent the allegations are contrary to the law or the documents to which they refer, they are denied.

193.    The allegations in Paragraph 193 of the Complaint are denied.

## PRAYER FOR RELIEF

Wells Fargo denies that Plaintiff is entitled to the relief demanded in subparagraphs (a) through (l) following Paragraph 193 of the Complaint.

## DEMAND FOR JURY TRIAL

Wells Fargo admits that Plaintiff demands a trial by jury.

## ADDITIONAL DEFENSES

Without admitting any of the allegations in the Complaint, and without admitting or acknowledging that Wells Fargo bears the burden of proof as to any of them, Wells Fargo asserts the following defenses. Wells Fargo intends to rely on any additional defenses that may become available or apparent during pretrial proceedings and discovery in this action and hereby reserves the right to seek leave from the Court to amend this Answer to assert all such defenses.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 36
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

## FIRST ADDITIONAL DEFENSE

The Complaint fails to the extent it does not set forth facts sufficient to state a claim upon which relief may be granted against Wells Fargo, and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief from Wells Fargo.

## SECOND ADDITIONAL DEFENSE

Plaintiff's claim fails to the extent all information Wells Fargo communicated to any third person regarding Plaintiff was accurate.

## THIRD ADDITIONAL DEFENSE

The Complaint fails to the extent that Plaintiff lacks standing or has not taken action necessary to avail himself of the rights he claims under the Truth in Lending Act (TILA), Real Estate Settlement Procedures Act ("RESPA"), Fair Credit Reporting Act (FCRA), or the Ohio Deceptive Trade Practices Act, and Plaintiff's alleged damages, if any, are speculative or uncertain and therefore not compensable.

## FOURTH ADDITIONAL DEFENSE

Plaintiff's claims fail to the extent that, at all relevant times with respect to Plaintiff, Wells Fargo acted in good faith and complied fully with all applicable state and federal statutes and regulations.

## FIFTH ADDITIONAL DEFENSE

Plaintiff's claims fail to the extent that they have been released or waived by Plaintiff's conduct.

## SIXTH ADDITIONAL DEFENSE

Plaintiff's claim for punitive damages fails to the extent that the Complaint states no facts in support of a claim for punitive damages.

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 37
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

### SEVENTH ADDITIONAL DEFENSE

Plaintiff's claim is barred, in whole or in part, to the extent that Plaintiff failed to protect himself from damages, if any, or failed to mitigate his alleged damages.

### EIGHTH ADDITIONAL DEFENSE

Plaintiff cannot recover against Wells Fargo to the extent that some or all of his claims for relief in the Complaint are barred by the doctrine of unclean hands.

### NINTH ADDITIONAL DEFENSE

Any recovery Plaintiff receives is subject to a set off if any damages are awarded against Wells Fargo, in the amount of any damages or settlement amounts recovered by Plaintiff with respect to the same alleged damages. Wells Fargo is also entitled to have any damages that may be awarded to Plaintiff reduced by the value of any benefit or payment to Plaintiff from any collateral source.

### TENTH ADDITIONAL DEFENSE

Any damages allegedly suffered by Plaintiff were not caused by Wells Fargo, but by intervening causes.

### ELEVENTH ADDITIONAL DEFENSE

This action may not properly proceed as a class action under Federal Rule of Civil Procedure, Rule 23, to the extent that, among other reasons, Plaintiff's claims are not typical of the claims of each putative class member; questions of law and fact allegedly common to the putative class do not predominate over the numerous questions affecting individual putative class members; a class action is not superior to other available methods for the fair and efficient adjudication of Plaintiff's claims and any claims of putative class members; Plaintiff and his counsel are unable to fairly and adequately protect the interests of the putative class members; and

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 38
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

there are insurmountable difficulties that would be encountered in any attempt to proceed as a class action.

### TWELFTH ADDITIONAL DEFENSE

Plaintiff cannot recover from Wells Fargo as a class action to the extent to which such class recovery would deprive Wells Fargo of its due process rights to assert individualized defenses to claims of class members.

### PRAYER FOR RELIEF

WHEREFORE, Wells Fargo requests this Court to enter a judgment:

1.      denying Plaintiff any and all relief in this case;

2.      dismissing Plaintiff's claims in their entirety;

3.      dismissing this case with prejudice;

4.      awarding Wells Fargo its costs and attorneys' fees incurred in this case; and

5.      granting Wells Fargo all other relief that the Court deems just and proper

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 39
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

DATED this 1st day of June, 2021.

GORDON TILDEN THOMAS & CORDELL LLP
Attorneys for Defendants

By ___ s/ Franklin D. Cordell _____
Franklin D. Cordell, WSBA #26392
Miles Bludorn, WSBA #54238
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
fcordell@gordontilden.com
mbludorn@gordontilden.com


s/Jason E. Manning _____
John C. Lynch
Jason E. Manning
Troutman Pepper Hamilton Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
757.687.7500
john.lynch@troutman.com
jason.manning@troutman.com

DEFENDANTS' ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S FIRST AMENDED CLASS
ACTION COMPLAINT - 40
No. 2:21-cv-00112-JCC

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA  98101
206.467.6477

# EXHIBIT A



I MELISSA JORDAN" COUNTY RECORDER WITHIN AND FOR SAID
COUNTY, HEREBY CERTIFY THAT THE FOREGOING IS A TRUE COPY OF RECORD WITHIN
OF RECORD OF _____
DELAWARE COUNTY RECORDS
_____ Melissa Jordan _____
DELAWARE COUNTY RECORDER
BY _____
DEPUTY RECORDER

Loan Number ████0789

## RELEASE OF MORTGAGE

This declares that a certain mortgage executed by **BRIAN WAYNE ECHARD AKA BRIAN ECHARD** (current owner) to **WELLS FARGO BANK, N.A.** recorded on 09/27/2016 in the record of mortgages, **Book 1454 and Page 1332**, in the office of the Recorder of **DELAWARE, Ohio.**

More particularly described as follows, to wit:
BEING LOT NUMBER ONE THOUSAND NINE HUNDRED AND EIGHTY-NINE (1989) OF HIGHLAND LAKES EAST SECTION 1, AS THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF, OF RECORD IN PLAT CABINET 1, SLIDES 212 THROUGH 216, RECORDER'S OFFICE, DELAWARE COUNTY, OHIO.

Property is commonly known as: 5473 SAINT ANDREWS DR, WESTERVILLE, OH 43082-8107.

Is hereby fully released and satisfied, and the Recorder is authorized to discharge the same of record.

IN WITNESS WHEREOF, the undersigned has hereunto set its hand by its proper officer **this 18th day of March in the year 2021.**
**WELLS FARGO BANK, N.A.**

By: _____ T Smith _____

**TRISTIN SMITH**
**VICE PRESIDENT LOAN DOCUMENTATION**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 18th day of March in the year 2021, by Tristin Smith as VICE PRESIDENT LOAN DOCUMENTATION of WELLS FARGO BANK, N.A., who, as such VICE PRESIDENT LOAN DOCUMENTATION being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____ Julie Martens _____

**JULIE MARTENS**
**COMM EXPIRES: 5/22/2022**

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

I hereby proclaim this document is an original document , dated this 18th day of March in the year 2021.

_____ T Smith _____

**TRISTIN SMITH**
**VICE PRESIDENT LOAN DOCUMENTATION**

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: Wells Fargo Home Mortgage, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683
WFHRC 422227488  DOCR T182103-12:26:54 [C-1]   ERCNOH1





*D0072804150*

# EXHIBIT B

# Note

---

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

September 20, 2016                    WESTERVILLE                         OH
[Date]                                   [City]                       [State]

5473 SAINT ANDREWS DR, WESTERVILLE, OH 43082-8107
[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $217,750.00 (this amount is called *"Principal"*), plus interest, to the order of the Lender. The Lender is Wells Fargo Bank, N.A.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.375%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. Payments.**

**(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on November 1, 2016. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2046, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*.

I will make my monthly payments at PO Box 11701, Newark, NJ 07101-4701 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $962.67.

**4. Borrower's Right to Prepay.**

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

**5. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

---

HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT-Veterans Affairs

Bankers Systems™ VMP®
Wolters Kluwer Financial Services                    2016091315.3.2.3509-J20160426Y

Form 3200 (1/01)
Amended 6/00
05/16
Page 1 of 3



**6. Borrower's Failure to Pay as Required.**

**(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment.

I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Allonge to This Note.** If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Other [Specify] _____ ☐ Other [Specify]
_____

**11. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT-Veterans Affairs

Bankers Systems™ VMP®
Wolters Kluwer Financial Services                              2016091315.3.2.3509-J20160426Y

Form 3200 (1/01)
Amended 6/00
05/16
Page 2 of 3



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the Property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("*VA*") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Borrower**

<u>Brian Echard</u>                                          9-20-16
**Brian Echard**                                          **Date**
                                                          *Seal*

*[Sign Original Only]*

**Loan Origination Organization:** Wells Fargo Bank N.A.

**NMLSR ID:** 399801

**Loan Originator:** Brittany Rose

**NMLSR ID:** 1399957

HCFG-00017
MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT-Veterans Affairs

Bankers Systems™ VMP®
Wolters Kluwer Financial Services                2016091315.3.2.3509-J20160426Y

Form 3200 (1/01)
Amended 6/00
05/16
Page 3 of 3


*1777558116207*

# EXHIBIT C

**Return To:** Wells Fargo Bank, N.A.
FINAL DOCS N0012-01B
6200 PARK AVE
DES MOINES, IA 50321

# Mortgage

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated September 20, 2016, together with all Riders to this document.

(B) *"Borrower"* is Brian Wayne Echard , a married ~~man~~ couple (AKA) Brian Echard and Amy Echard Borrower is the mortgagor under this Security Instrument.

(C) *"Lender"* is Wells Fargo Bank, N.A.. Lender is a corporation organized and existing under the laws of United States of America. Lender's address is 101 North Phillips Avenue, Sioux Falls, SD 57104. Lender is the mortgagee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated September 20, 2016. The Note states that Borrower owes Lender two hundred seventeen thousand seven hundred fifty and 00/100 Dollars (U.S. $217,750.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2046.

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 1 of 19



**(E)** *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

**(F)** *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G)** *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

|  |  |  |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(H)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** *"Escrow Items"* means those items that are described in Section 3.

**(L)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 2 of 19



**(O)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County [Type of Recording Jurisdiction] of Delaware [Name of Recording Jurisdiction]: SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number: 31732404062000 which currently has the address of 5473 SAINT ANDREWS DR [Street] WESTERVILLE [City], Ohio 43082-8107 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 3 of 19




for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

Form 3036 1/01

05/16
Page 4 of 19

2016091315.3.2.3509-J20160426Y



Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01
05/16
Page 5 of 19



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 6 of 19



given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

---

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 7 of 19



In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 8 of 19



Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 9 of 19



do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

---

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services
2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 10 of 19



Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 11 of 19



by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

---

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-
J20160426Y

Form 3036 1/01

05/16
Page 12 of 19



All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

---

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 13 of 19



If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 14 of 19



include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01
05/16
Page 15 of 19



cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection;

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 16 of 19



(c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose**

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 17 of 19



this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, Delaware County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**



Brian Wayne Echard  (AKA) Brian Echard    Date
                                           Seal



Amy Echard                                 Date
     (NON BORROWING SPOUSE)                Seal

---

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

2016091315.3.2.3509-J20160426Y

Form 3036 1/01

05/16
Page 18 of 19

**Acknowledgment**

**State of Ohio**

**County of** _Delaware_

This instrument was acknowledged before me on _September 20, 2016_ by
_Brian Wayne Echard and Amy Echard_

_Joyce Woods Payton_
Notary Public
My commission expires:   _10/13/20_



**Loan Origination Organization:** Wells
Fargo Bank N.A.
**NMLSR ID:** 399801

**Loan Originator:** Brittany Rose
**NMLSR ID:** 1399957

This instrument was prepared by: Jamie L Terry
800 WALNUT ST
8TH FLOOR
DES MOINES, IA 50309-3605

HCFG-00360
OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
Bankers Systems™ VMP®
Wolters Kluwer Financial
Services

2016091315.3.2.3509-
J20160426Y

Form 3036 1/01

05/16
Page 19 of 19



# EXHIBIT D

# Customer Experience Diagram
## Digital Mortgage Assistance Solution



## Current State with COVID-19 enhancements – Mortgage Only



**A** — Customer navigates to WellsFargo.com → Wells Fargo.com Landing → Customer authenticates → **A** Account Summary (with account level COVID-19 relief message and request link) → Customer selects an account to view → **B** Account Detail (with account level COVID-19 relief message and request link) → Customer chooses the COVID-19 loan assistance request option → **C** COVID-19 Loan Assistance Request Form → Customer completes a COVID-19 loan assistance request form → **D** COVID-19 Loan Assistance Confirmed → Documents distributed by U.S. Mail

Customer Documents

Assistance Batch Processing Routine

Form output sent for manual input

### Diagram Key
- unchanged experience
- modified experience
- new experience









1

# Messaging in Account Summary _ Single Account

When a customer accesses Online banking they will see option to request payment suspension



# Messaging in Account Detail _ Single Account

Desktop

Mobile





1st Click

3

# COVID 19 Loan Assistance request form

Customer will submit form and receive confirmation.
Requests will be processed by technology overnight and letter to customer will be sent.



4

# COVID 19 Loan Assistance request confirmation



# EXHIBIT E

| ID | REASON | LOAN_ NUMBER | ECN | COVID_ IMPACT | MORTGAGE_ ASSISTANCE | CONSENT_TO_ CONTACT | DT |
|---|---|---|---|---|---|---|---|
| ███023 | HOME_ LENDING | ██████0789 | ██████5519 | Y | Y | N | 04-01-2020 15:54 |

# EXHIBIT F

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | HOME MORTGAGE

085

April 8, 2020

BRIAN ECHARD
5473 SAINT ANDREWS DR
WESTERVILLE, OH 43082-8107

| **Account Information** | |
|---|---|
| **Online:** | wellsfargo.com |
| **Fax:** | 1-866-590-8910 |
| **Telephone:** | 1-800-416-1472 |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of operation:** | Mon.- Thu., 7 a.m. - 9 p.m., |
| | Fri., 7 a.m. - 8 p.m., |
| | Sat., 8 a.m. - 4 p.m., CT |
| **Loan number:** | ████0789 |
| **Property address:** | 5473 Saint Andrews D |
| | Westerville OH 43082 |

Subject: We're confirming short-term payment relief for this account

Dear Brian Echard:

Thank you for letting us know about a financial hardship you're facing. This may be a difficult time, so please count on us to work with you every step of the way.

You may not know how you'll be affected by the spread of coronavirus (COVID-19), so we want to help by providing you with time to assess your situation. For this reason, we're confirming the following short-term payment relief for your account. If you find you do not need the payment relief, you can continue to make the payments as normal and no further action is needed.

**Your short-term payment relief**
We understand that you may not be able to make your regular payments during this difficult time so we are granting a three month payment suspension. To help:
- We won't report a past-due status for this account to the consumer reporting agencies.
- We won't charge late fees.
- If the account is past-due, we won't refer it to foreclosure during this time.

**Consider the assistance that's best for you**
This short-term payment relief provides you with assistance right away. If you don't think this short-term payment relief is right for you, please contact us.

**What you need to know**
- We have suspended your obligation to make your monthly mortgage payment for three months. Unless you receive further relief, you'll need to resume your regular mortgage payment schedule beginning on July 1, 2020.

- When short-term relief ends:
  o We understand you may not be able to make the missed payments in a lump sum. If you need additional assistance at the end of the three months, we will need to work with you on how to handle the suspended payments. Possible options may include:
    - A continuation of the payment suspension.
    - Moving the missed payments to end of the loan.

**Account Information**

| | |
|---|---|
| **Loan number:** | ▇▇▇▇0789 |
| **Property address:** | 5473 Saint Andrews D<br>Westerville OH 43082 |

- A modification.
  - o If you find that you need more time to recover or are unable to catch up, please contact us to talk about your specific financial needs. We can help explore your options.
  - o Some longer-term options that may be available might affect the terms of your loan, including the interest rate, maturity date, and monthly payment amount.
  - o Reporting the past-due status to the consumer reporting agencies, late fees, and possible foreclosure activities may resume.

- Accepting this short-term payment relief could affect the features of your loan and other payment assistance programs already in place.
  - o Any unpaid payments could affect your ability to remove the mortgage insurance premium.
  - o If the mortgage was modified under the Home Affordable Modification Program (HAMP) or Second Lien Modification Program (2MP) and you don't make a payment during this time, you could lose the pay-for-performance incentives. This is because you must remain in good standing with HAMP and 2MP.
  - o Statements will show past-due during this relief period. You'll also receive required notices about overdue payments.

- This payment relief option is based on an incomplete application for assistance. Other payment assistance options may be available. If you would like a review for all available assistance options, you may submit a complete application, which would include information about your income and expenses. This review is available whether or not you accept this short-term payment relief. Please contact us for more information.

**What you need to do**
- If you're not able to make payments during this time and the payments are automatically withdrawn, you'll need to cancel or suspend the payments. To adjust automatic recurring payments please go to wellsfargo.com to make the adjustments. If you use a bill pay or a third-party payment service, contact the service provider directly to make any changes.
- If the length of the hardship changes or you're still unable to make your payments at the end of the plan, please contact us. We want to help.

**We're here to help**
If you have questions about the information in this letter, please call us at the phone number in the account information box at the top of this letter.

Home Preservation Department
Wells Fargo Home Mortgage

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

**Get free counseling to help manage expenses and avoid foreclosure.**

HP646 936 0006

**Account Information**

| | |
|---|---|
| **Loan number:** | ▇▇▇0789 |
| **Property address:** | 5473 Saint Andrews D Westerville OH 43082 |

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

**Contact other servicers**
As a reminder, it's important to consider contacting the servicers of any other mortgage loans that are secured by this property to discuss mortgage assistance options.

**An appraisal may be required as part of this process.**
When you apply for assistance on a home that is secured by a first lien, we may need to appraise the home. If we do, you'll receive a copy of any written appraisals related to this application.

Our acceptance and posting of your payments during the short-term payment assistance plan will not be deemed a waiver of the right to accelerate or foreclosure actions, and related activities, and shall not constitute a cure of any default under your loan unless such payments are sufficient to completely cure the entire default under your loan.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in this assistance shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Forbearance Plan Agreement (Page 1 of 1)

Loan number: ███0789
- ó   New Monthly Payment Amount: $0.00. This payment suspends the current monthly mortgage payment, and it's based on your ability to pay.
- ó   You can choose to prepay the outstanding amount at any time.

```
01  04/01/20          .00      02  05/01/20          .00
03  06/01/20          .00
```

While you're receiving short-term mortgage assistance, please contact us immediately if you have any changes to your financial situation. For example, you might have a change in your income or your expenses. A new evaluation of your new financial information may adjust what options are available.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect, and you will comply with those terms. Nothing in this assistance shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

# EXHIBIT G

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

085

July 2, 2020

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon.- Thu., 7 a.m. - 9 p.m., |
| | Fri., 7 a.m. - 8 p.m., |
| | Sat., 8 a.m. - 4 p.m., CT |
| Loan number: | ▇0789 |
| Property address: | 5473 Saint Andrews D |
| | Westerville OH 43082 |

BRIAN ECHARD
5473 SAINT ANDREWS DR
WESTERVILLE, OH 43082-8107

Subject: Contact us right away - we need to know if you can resume making payments or still need help

Dear Brian Echard:

Our thoughts are with you and everyone affected by the COVID-19 crisis. You had asked for help with your mortgage payments because you were facing a financial hardship as a result of the crisis. To help, we suspended your mortgage payments for three months.

Contact us right away to let us know if you no longer need assistance or still need help

Step 1: Decide if you're ready to resume making monthly payments in August 2020 or if you need more time to recover.

Step 2: Contact us right away to let us know what you decide:
- Reach us online anytime, anywhere, with no wait time. You can use the Payment Assistance: Action Requested form to request an extension or to let us know if you're ready to resume making monthly payments. Easily access this form on the mortgage account summary page when you sign on to your account at wellsfargo.com
- Or by phone: Call us at 1-800-416-1472

See "Details About Making Up Missed Payments," enclosed. It'll help you make an informed decision about what's best for you. When you contact us, we'll cover this information and help you through next steps.

If you're ready to resume making monthly payments
We'll work with you to discuss programs that may help you catch up on missed payments.

Resuming making payments, if you can, is a good choice because it:
- Provides you with the opportunity to apply for new credit or to refinance with Wells Fargo.
- Reduces the chance that your escrow account, if you have one, will have a shortage. If you miss payments, your escrow account may not have enough to cover your tax and insurance bills. We'll continue to pay them, but this could increase your future monthly payments.
- Reduces the number of suspended payments that you'll need to repay.

HP659 936 0012

**Account Information**

| | |
|---|---|
| Loan number: | ███0789 |
| Property address: | 5473 Saint Andrews D Westerville OH 43082 |

### If you need more time to recover

You have the option to extend your payment suspension for up to another three months, for a total of six months. If your financial hardship continues beyond six months, you'll need to contact us. You may have the option to extend it further.

Requesting an extension might be right for you if:
- You still have a financial hardship related to the COVID-19 crisis.
- And you're not able to resume making your monthly payments.

If you request an extension, you should know:
- If you have a home equity line of credit with us, it will be restricted from further advances. You will not have access to funds from that account. If the account is already restricted, it will remain so.
- You will be ineligible for any new Wells Fargo mortgage product, including a new home loan or a refinancing of an existing home loan, until certain conditions are met:
  - Your financial hardship must be over.
  - You must be out of payment suspension.
  - You must have resolved any missed payments.
- You may also be ineligible for other new Wells Fargo consumer credit products, such as an auto loan, personal loan or credit card, until these conditions are met.

### We're here to help

It's important that we hear from you right away so that we know how to help you. We hope that you and your loved ones remain safe during the COVID-19 crisis. Thank you for being a valued Wells Fargo customer.

Sincerely,

Brent Potter
Senior Vice President
Wells Fargo Home Mortgage

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# Details about making up missed payments

It's best to resume making payments as soon as you're able to. If you can afford to do so, you can repay the entire amount of missed payments all at once to bring your account current. You can then continue with your normal payments. We understand that you may not be able to do this.

If you need help catching up, we can consider your financial situation and loan status to help us determine if you're eligible for one of these programs.

| First, we'll consider this program: | |
| --- | --- |
| Repayment plan | We may be able to divide the amount due from the missed payments into manageable amounts, spread out over time. This would increase your regular mortgage payment for a period of time, but it would bring your mortgage current. |

| If a repayment plan isn't right for you, we'll consider you for one of the following programs: | |
| --- | --- |
| Deferred payments | If you can afford to resume making your regular mortgage payment, we may have a solution. Because your payments were current, or less than 30 days past-due, as of March 13, 2020, we may be able to move the amount of the missed payments to the end of your loan team. For this program, this would extend the loan term by the number of missed payments. |
| Loan modification | If you cannot afford to make up the missed payments and resume making your regular mortgage payment, we may still be able to help. If you're experiencing a financial hardship, we may be able to make your payments more affordable by modifying your loan terms. For example, we may be able to change the interest rate or the time allowed to repay the loan.<br>ó   Your new payment would be based on your current financial situation.<br>ó   We'll need to gather your financial information to review and qualify you for this solution.<br>ó   We'll evaluate your financial situation based on guidelines provided by the Veterans Affairs (VA) to determine what options are available for you. |

For more information on mortgage payment assistance, visit wellsfargo.com/mortgageassist. You can also visit consumerfinance.gov/coronavirus/mortgage-and-housing-assistance.

# EXHIBIT H

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

085

July 22, 2020

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-590-8910 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ███████0789 |
| Property address: | 5473 SAINT ANDREWS DR |
| | WESTERVILLE OH 43082 |

BRIAN ECHARD
5473 SAINT ANDREWS DR
WESTERVILLE, OH 43082

Subject:  As you move out of the COVID-19 payment suspension (forbearance), we're offering you a loan modification

Dear BRIAN ECHARD:

Thank you for connecting with us. We understand that this has been a difficult time, and we hope that suspending your mortgage payments has been helpful for you.

**We're pleased to share that you're approved for assistance.**
This is a big step toward keeping your home - entering the trial period gives you the opportunity to become current with payments. We're confirming that we'll move the number of payments missed during the payment suspension period to the end of the loan. This will extend the loan, but only by the number of principal and interest payments missed.

Overview of the assistance offer:
Trial period monthly mortgage payment:
$1,576.75

Here's a breakdown of the assistance:

| | | |
|---|---|---|
| Principal and interest: | $948.99 |
| Escrow property insurance: | $96.23 |
| Escrow property taxes: | $506.00 |
| Escrow shortage: | $25.53 |
| Total: | $1,576.75 |

To accept this offer, please complete one of the following within 14 days from the date of this letter.
*   Call us at 1-800-416-1472.
*   Make the first payment listed in the payment table below. Note that this may be earlier than the scheduled due date described below.

To decline this offer, please call us within 14 days from the date of this letter.

HP201 936

| Account Information | |
|---|---|
| Loan number: | █████0789 |
| Property address: | 5473 SAINT ANDREWS DR WESTERVILLE OH 43082 |

Once you've accepted the offer, please send us the trial payments by the dates indicated below:

| Payment Plan | Amount | Due By |
|---|---|---|
| 01 | $1,576.75 | SEPTEMBER 01, 2020 |
| 02 | $1,576.75 | OCTOBER 01, 2020 |
| 03 | $1,576.75 | NOVEMBER 01, 2020 |

Your payment may change if we complete an escrow analysis during your trial period. If we make a change, we'll provide you with an escrow analysis statement.

What should you know before accepting this offer
- You are approved for a loan modification, as long as there are no issues with the title. This modification gives you the chance to become current with your payments. The VA has established the guidelines for this extension.
- We'll research the title to make sure that there are no issues, such as judgments or tax liens. If we find any issues, or if we need additional information, we'll contact you.
- If you do not complete the trial period after accepting the offer, your mortgage will reflect the existing terms and provisions.
- If you accept this offer, we'll make every effort to postpone the sale if a foreclosure sale date has already been set. Please understand that some courts may not grant our request. However, this offer ends if any payments are delayed. In this case, your loan will not be modified under the offer terms, and foreclosure proceedings may resume.

What should you do after accepting this offer
- Once you've accepted the offer, you can send your trial payments to the following address. Please remember to include your loan number with your payments.

Wells Fargo Home Mortgage
P.O. Box 14538
Des Moines, IA 50306-3538

Note: We are offering you a payment assistance program that is temporary and is based on a partial review of your loan. If you would like a complete review of your loan, which includes a review for other assistance options, additional documentation is required. Please contact us for more information.

We're here to help
We'll reach out if there are further updates. Please continue to count on us to work with you, and feel free to contact us at the number in the account information box at the top of this letter if you have any questions.

HP201 936

| Account Information | |
| --- | --- |
| Loan number: | ████0789 |
| Property address: | 5473 SAINT ANDREWS DR<br>WESTERVILLE OH 43082 |

Home Preservation Department
Wells Fargo Home Mortgage

## Contact us

If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

## Get free counseling to help manage expenses and avoid foreclosure.

Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. If you have been called to active military service, or are the spouse, partner in civil union, domestic partner, or financial dependent of a person who has been called to active military service, and you haven't yet made us aware of your status, please contact us as indicated below:

- Wells Fargo Home Mortgage military customer: Call 1-866-936-SCRA (1-866-936-7272) or fax your Active Military Service Documentation to 1-877-658-4585, attention SCRA.

In addition, please be aware that prior to seeking a refinance of your existing mortgage loan, you should consult with your legal advisor regarding the potential loss of any benefits you are entitled to under the Servicemembers Civil Relief Act or applicable state law.

| Account Information | |
|---|---|
| Loan number: | ████0789 |
| Property address: | 5473 SAINT ANDREWS DR WESTERVILLE OH 43082 |

**Additional details**
You'll find details of the assistance, your rights, free assistance, and other helpful information on the following pages.
A. Important information you should know
B. Additional help is available to you
C. Other helpful information

**A. Important information you should know**

**About your credit report.**
If your loan was current when you requested payment suspension, we'll continue to report the loan as current until the loan modification is complete. Then, we'll report it with a comment that the loan was affected by a natural or declared disaster.

We will not report the delinquency status of your loan or your entry into a trial period plan to credit reporting agencies during the trial period so long as you are paying in accordance with the terms of this trial period plan.

**About an escrow account**
For most customers, if you accept this assistance, you'll be required to establish an escrow account. This is a separate account that you fund and we use to make payments for property taxes, homeowners insurance, and mortgage insurance on your behalf. Contact me if you have questions about the escrow account.

If you didn't have an escrow account before, we'll create one for you to make these payments. If you already have one, you'll simply continue with it. You'll get more information about the escrow account at the next escrow analysis. During an escrow analysis, we review the account to make sure there are enough funds to make the payments.

**You may have an escrow shortage.**
If you have an escrow account, there may be a shortage at the next escrow analysis. This may be because of the payments you missed during the payment suspension period. After the modification is complete, we'll spread that shortage over a period of 60 months, starting after the next escrow analysis. Or you can pay the shortage in full using the instructions provided on your escrow review statement.

| Account Information | |
|---|---|
| Loan number: | ████0789 |
| Property address: | 5473 SAINT ANDREWS DR WESTERVILLE OH 43082 |

## B. Additional help is available for you

There is free help available to you if you are struggling with expenses and trying to avoid foreclosure. Contact a counselor or financial specialist to help you manage expenses and avoid foreclosure. These financial coaching and counseling services are available to you at no cost.

- Beware of any person or organization that asks you to pay a fee in exchange for housing counseling services or modification of a delinquent loan.
- Beware of anyone who says they can "save" your home if you sign or transfer over the deed to your house. Do not sign over the deed to your property to any organization or individual unless you are working directly with your mortgage company to forgive your debt.
- Never make your mortgage payments to anyone other than your mortgage company without their approval.

To find an agency near you visit: www.hud.gov/offices/hsg/sfh/hcc/fc

Or call toll-free number: 1-800-569-4287 (TDD 1-800-877-8339)

Free help is available to you from the Homeownership Preservation Foundation (HPF), a national non-profit agency specializing in consumer finance and education.

Call: 1-855-306-1536, Monday - Friday, 7:00 a.m. - 8:00 p.m. Eastern Time

## C. Other helpful information

If we discover issues with the property's title, we will contact you to help us resolve them for you.

Please note that your trial period may extend beyond the dates provided due to title issues against the property. For this reason, you should continue to make your trial period payments in the same amount by the same day each month, until the title issues are resolved. If these issues aren't resolved, we won't be able to complete the modification, even if you pay the trial period payments. Your home preservation specialist will let you know when you can move forward with the final modification or if there are changes in your eligibility status.

## Modification process

We can finalize your modified loan terms after you successfully complete your trial plan. At that time we will send you a temporary loan modification agreement ("Modification Agreement"), which will reflect the terms of your modified loan. You will need to sign and promptly return to us the required copies of the Modification Agreement or your loan cannot be modified.

## Legal notices

The lender is under no obligation to enter into any further agreement, and this trial period shall not constitute a waiver of the lender's right to insist strict performance in the future.

All terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms. Nothing in this assistance shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents. Any breach of any provision of this agreement or non-compliance with this trial payment

**Account Information**

| | |
|---|---|
| Loan number: | ████0789 |
| Property address: | 5473 SAINT ANDREWS DR WESTERVILLE OH 43082 |

period, may render the trial payment period null and void, and at the option of the lender without further notice to you may terminate this trial payment period. Also, in the event of any breach of this trial payment period, the lender, at its option, may institute foreclosure proceedings according to the terms of the note and security instrument without regard to this trial payment period. In the event of foreclosure, you may incur additional expenses of attorney's fees and foreclosure costs.

We are attempting to collect a debt while complying with fair debt collection practices.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2020 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

# EXHIBIT I



**OCTOBER 31, 2020**

**BRIAN ECHARD**
**AMY ECHARD**
**5473 SAINT ANDREWS DR**
**WESTERVILLE, OH 43082**

| Account Information | |
|---:|:---|
| **Online:** | yourwellsfargomortgage.com |
| **Fax:** | 1 (866) 359-7363 |
| **Telephone** | 1 (800) 416-1472 |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of Operation:** | Monday - Thursday, 7:00 a.m. – 9:00 p.m. Central Time |
| | Friday, 7:00 a.m. – 8:00 p.m. Central Time |
| | Saturday, 8:00 a.m. – 4:00 p.m. Central Time |
| **Loan Number** | **(scan barcode)** |
| **Property Address:** | **5473 SAINT ANDREWS DR** |
| | **WESTERVILLE, OHIO 43082** |

Dear BRIAN ECHARD, AMY ECHARD:

**Subject**:  You're approved for a loan modification – the Agreement is enclosed.

We're pleased to confirm that you've been approved for a loan modification.

**The Loan Modification Agreement (Agreement) is enclosed.** This Agreement provides the terms of the modified mortgage. It's important to note that we're modifying the original loan documents, not refinancing them into a new loan.

This letter provides the information you'll need to accept this modification.

**What you need to do:** To accept this modification, you will need to sign and return the following documents by **NOVEMBER 15, 2020:**

- One signed and dated copy of the Agreement.  Keep the other copy for your records.
- Notice of Special Flood Hazard Area (SFHA), if enclosed.

**Use the enclosed postage-paid envelope to send these documents to us at:**

**Wells Fargo Home Mortgage**
1000 Blue Gentian Road
Suite 300
MAC X9999-01N
Eagan, MN 55121

If you don't sign and return these documents to us by **NOVEMBER 15, 2020** and you still wish to be considered for a modification, you must contact us immediately.

**Important information:**

Wells Custom Disaster Extend Mod 07242020_511



- All mortgagors must sign their name exactly as it is printed on the documents. Please use blue or black ink.

- If any of the mortgagors listed should not be required to sign the documents OR has a different name than what is listed on the documents, please provide the appropriate documentation that supports this change. Acceptable documents may include a death certificate, a divorce decree along with a recorded Quit Claim Deed, or marriage certificate.

- If all pages of the above documents are not received or if you have not contacted us by **NOVEMBER 15, 2020**, we will conclude that you are no longer interested in modifying the existing loan and the loan will not be modified.  Until we receive the signed and completed documents, we cannot complete the modification.  We will continue to service the mortgage loan, however.  This may include continuing to send collections communications by telephone calls or letters, and continuing any legal proceedings.

- If you have an escrow account, there may be a shortage at the next escrow analysis. We will spread that shortage over the next 60 payments, or you can pay it in full using the instructions provided on the escrow review statement.

**Details of the Agreement**:
1. Due date of first payment:                              **DECEMBER 1, 2020**
2. Principal balance:                                          **$200,947.98**
3. Principal and interest monthly payment amount:  **$949.09**
4. Escrowed real estate taxes monthly amount:       **$506.00**
5. Escrowed property insurance monthly amount:    **$96.23**
6. Escrowed shortage monthly amount:                  **$25.53**
7. Total monthly escrow payment                          **$627.76**
8. Total monthly payment:                                    **$1,576.85**
   This payment amount includes principal, interest, and if applicable, escrow and escrow shortage amounts.
9. Maturity date:                                               **FEBRUARY 1, 2047**
10. Interest rate:                                              **3.2500%**

**We're here to help**
I look forward to hearing from you by **NOVEMBER 15, 2020.** If you have any questions please call me at the phone number below.

Sincerely,

**WF HOME MORTGAGE**
**Home Preservation Specialist**
**866-234-1425 ext. 8662341425**
**Wells Fargo Home Mortgage**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2018 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801





# With our free mobile notary service, a notary will come to you

*You'll need to sign documents to accept the agreement. Some of those signatures you'll need to have notarized. We're making this process simpler for you by providing a free notary signing service*

## A notary will contact you soon











The notary will contact you with the phone number we have on file and arrange a convenient time and place to meet with you. The notary will bring the Loan Modification Agreement and related documents ("documents") for you to sign. You can keep the enclosed documents for your records.

Review the documents enclosed. Contact your home preservation specialist if you have any questions.

See the signing instructions, "What You Need to Know About Signing This Agreement," also enclosed. You can use it to complete the documents successfully.

Have a valid, government-issued ID ready, which can include a driver's license, state ID card, or passport. The notary must ensure that it matches the name on the documents.

If a notary hasn't contacted you within three business days from the day you received these documents, please contact your home preservation specialist. They'll help you get in touch with the notary.

If you choose not to work with our mobile notary service, please contact your home preservation specialist. They'll provide you with an additional set of the documents and a postage-paid envelope. You can take them to a notary of your choice and keep the enclosed documents for your records.

### Contact us with any questions

Your notary won't be able to answer questions about the information in the documents, but your home preservation specialist will. Please contact them before you set up your signing appointment. You'll find their number listed on the cover letter.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Wells Custom Disaster Extend Mod 07242020_511





# What you need to know about signing this agreement

*Use this checklist with the notary, who must be present when you sign the documents. Your modification will close sooner if you complete your documents correctly.*

## Customers (borrowers)

☐ Review all the documents enclosed, including the Loan Modification Agreement, affidavits, and all related documents ("documents"). These may also need your notarized signature.

☐ Work with a notary, who must be present when you complete, sign, and date the documents.

☐ Use blue or black ink.

☐ Make sure that all signatures match the printed names.

☐ Write in the date where indicated.

☐ If you or another borrower needs to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Your state may require witnesses to sign these documents. If this is the case, they must neatly print their names below their original signatures.

> **Note:** *The notary can be a witness, except in the state of Louisiana. If the notary is a witness, he or she must sign in both the Witness and the Borrower Acknowledgement sections.*

## Notary

☐ Review the documents to be completed and notarized.

> **Note:** *Each set of documents includes the Loan Modification Agreement, affidavits, and all related documents ("documents"). The customer must sign the agreement along with any affidavits or related documents, if they're enclosed.*

☐ Use blue or black ink.

☐ Don't print the customer's driver's license or other identification document numbers on the documents.

☐ Both you and the customer must sign where indicated and on the same date. Please also write the month, day, and year.

☐ If you need to correct a signature or date that you wrote by mistake, draw a line through the error and write in the correction clearly. Then initial the correction.

☐ Place the stamp and your signature within the document margins. Place the stamp below the Borrower Acknowledgement section on the Acknowledgment page.

> **Note:** *We will fill out the Lender Acknowledgement section. Do not notarize the Lender Acknowledgement section.*

☐ Make sure that the stamp and all other information is legible.

☐ Do not cover any written information with the stamp or your signature.

☐ Complete the state and county.

☐ Print your name under your signature in the Acknowledgement section. When you notarize the Borrower Acknowledgement section, provide the date your commission expires.

☐ Also print your name after the "before me" paragraph in the Acknowledgement sections. In different states, this might say "acknowledged before me" with a blank line, "by the undersigned," or other variations.



**You can contact your home preservation specialist if you have any questions along the way.**

**Call us at the number listed on the cover letter.**

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2018 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

Wells Custom Disaster Extend Mod 07242020_511



This Document Prepared By:
**KIRAN KUMAR S**
**WELLS FARGO BANK, N.A.**
**1 HOME CAMPUS**
**DES MOINES, IA 50328**
**(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.**
**FAMS – DTO RECORDING**
**3 FIRST AMERICAN WAY**
**SANTA ANA, CA  92707-9991**

**Tax/Parcel #: 317-324-04-062-000**
_____ **[Space Above This Line for Recording Data]** _____

| | |
|---|---|
| **Original Principal Amount: $217,750.00** | **Investor Loan No.:** |
| **Unpaid Principal Amount: $200,947.98** | **Loan No: (scan barcode)** |
| **New Principal Amount $200,947.98** | |
| **Total Cap Amount: $0.00** | |

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **OCTOBER 31, 2020**
Borrower ("I")[1]: **BRIAN ECHARD, MARRIED**
Borrower Mailing Address: **5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **1 HOME CAMPUS, DES MOINES, IA 50328**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **SEPTEMBER 20, 2016** and the Note
("Note") date of **SEPTEMBER 20, 2016 and Recorded on SEPTEMBER 27, 2016 in INSTRUMENT NO.**
**2016-00029337  BOOK 1454  PAGE 1332, of the OFFICIAL Records of DELAWARE COUNTY, OHIO**

Property Address ("Property"): **5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my")
shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Custom Disaster Extend Mod 07242020_511

Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

This Loan Modification Agreement ("Agreement") is made on **OCTOBER 31, 2020** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, and are properly secured by the Property.

This Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return one copy of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **The Modification.**

   A. The current contractual due date has been changed from **AUGUST 1, 2020** to **DECEMBER 1, 2020**. The first modified contractual due date is **DECEMBER 1, 2020**.

   B. The maturity date will now be **FEBRUARY 1, 2047**.

   C. Interest at the rate of **3.2500%** will begin to accrue on the unpaid principal balance of **$200,947.98** ("Interest Bearing Principal Balance") as of **NOVEMBER 1, 2020.**

   D. The payment schedule for the modified loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|---|---|---|---|---|---|---|
| 315 | 3.2500% | 11/01/2020 | $949.09 | $627.76 | $1,576.85 | 12/01/2020 |



After the modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.

**2.   Additional Agreements**.

I agree to the following:

A.   If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B.   If the Borrower's balance has been reduced as a result of this Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with the Loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. **Exception:** In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

C.   If the Loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

D.   If the Borrower's homeowners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account.  If LPI is placed on the account, the monthly payment could increase.  All other terms of the Agreement will not be affected by the LPI and will remain in effect in accordance with this Agreement.

E.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

F.   CORRECTION AGREEMENT:  The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Agreement, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed.  In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf.  This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments.  Any of these specified changes must be executed directly by the undersigned.  This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later.  Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement, which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

G.   All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating



to default in the making of payments under the Loan Documents shall also apply to default in the making of the payments under this Agreement.

H.  I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/or subordination Agreement(s).

I.  Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement without alteration by **NOVEMBER 15, 2020**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel this Agreement. If the Borrower returns a properly signed Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**



In Witness Whereof, I have executed this Agreement.

_____     _____
Borrower:**BRIAN ECHARD**                                                           **Date**

_____     _____
**AMY ECHARD *signing solely to acknowledge this Agreement, but not to incur any personal
liability for the debt**
_____ [Space Below This Line for Acknowledgments] _____

## BORROWER ACKNOWLEDGMENT

State of _____

County of _____

The foregoing instrument was acknowledged before me this _____ (date) by
**BRIAN ECHARD, AMY ECHARD**, (name of person acknowledged.)


_____
Notary Public

Printed Name:_____

My commission expires: _____

Prepared by:                              RECORD AND RETURN TO:
KIRAN KUMAR S                        FIRST AMERICAN TITLE CO.
WELLS FARGO BANK, N.A.           FAMS – DTO RECORDING
1 HOME CAMPUS                       3 FIRST AMERICAN WAY
DES MOINES, IA 50328               SANTA ANA, CA  92707-9991
(800) 416-1472

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

_____     _____     _____
By: (print name)                                                    (sign)                              Date
          (title)

_____ [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

**STATE OF** _____

**COUNTY OF** _____

This instrument was acknowledged before me _____(date) by

_____ (name(s) of person(s)) as _____ (type

of authority, e.g., officer, trustee, etc.) of **WELLS FARGO BANK, N.A.** (name of party on behalf of whom

the instrument was executed).


_____
Notary Public


Printed Name: _____

My Commission Expires:

_____

**EXHIBIT A**

**BORROWER(S):  BRIAN ECHARD, MARRIED**

**LOAN NUMBER:  (scan barcode)**

**LEGAL DESCRIPTION:**

**THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF OHIO, COUNTY OF DELAWARE, AND DESCRIBED AS FOLLOWS:**

**REAL PROPERTY IN THE TOWNSHIP OF GENOA, COUNTY OF DELAWARE, STATE OF OHIO, AND IS DESCRIBED AS FOLLOWS:**

**BEING LOT NUMBER ONE THOUSAND NONE HUNDRED AND EIGHTY-NINE (1989) OF HIGHLAND LAKES EAST SECTION 1, AS
THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF, OF RECORD IN PLAT CABINET 1, SLIDES
212 THROUGH 216, RECORDER'S OFFICE, DELAWARE COUNTY, OHIO.**

**ALSO KNOWN AS: 5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**



Date: **OCTOBER 31, 2020**
Loan Number: **(scan barcode)**
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **BRIAN ECHARD, AMY ECHARD**

Property Address: **5473 SAINT ANDREWS DR**, **WESTERVILLE, OHIO 43082**

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____
Borrower:                                                                                          Date
**BRIAN ECHARD**

_____
                                                                                                       Date

**AMY ECHARD** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt



Date: **OCTOBER 31, 2020**
Loan Number: **(scan barcode)**
Lender: **WELLS FARGO BANK, N.A.**

Borrower: **BRIAN ECHARD, AMY ECHARD**

Property Address: **5473 SAINT ANDREWS DR**, **WESTERVILLE, OHIO 43082**

# ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In consideration of **WELLS FARGO BANK, N.A.**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

Borrower: **BRIAN ECHARD** _____          **Date** _____

_____

**AMY ECHARD** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt          **Date** _____



# EXHIBIT J

This Document Prepared By:
**KIRAN KUMAR S
WELLS FARGO BANK, N.A.
1 HOME CAMPUS
DES MOINES, IA 50328
(800) 416-1472**

When Recorded Mail To:
**FIRST AMERICAN TITLE CO.
FAMS – DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-9991**

Tax/Parcel #: 317-324-04-062-000
_____ [Space Above This Line for Recording Data] _____
Original Principal Amount: $217,750.00           Investor Loan No.:
Unpaid Principal Amount: $200,947.98             Loan No: (scan barcode)
New Principal Amount $200,947.98
Total Cap Amount: $0.00

# LOAN MODIFICATION AGREEMENT (MORTGAGE)

Executed on this day: **OCTOBER 31, 2020**
Borrower ("I")[1]: **BRIAN ECHARD, MARRIED**
Borrower Mailing Address: **5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**
Lender or Servicer ("Lender"): **WELLS FARGO BANK, N.A.**
Lender or Servicer Address: **1 HOME CAMPUS, DES MOINES, IA 50328**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") **SEPTEMBER 20, 2016** and the Note
("Note") date of **SEPTEMBER 20, 2016** and Recorded on **SEPTEMBER 27, 2016** in INSTRUMENT NO.
**2016-00029337 BOOK 1454 PAGE 1332**, of the OFFICIAL Records of DELAWARE COUNTY, OHIO

Property Address ("Property"): **5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I" or "my")
shall include the plural (such as "we" or "our") and vice versa where appropriate.

Wells Custom Disaster Extend Mod 07242020_511



Legal Description:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

This Loan Modification Agreement ("Agreement") is made on **OCTOBER 31, 2020** by and between Borrower, as obligor(s), or as title holder(s) to the Property, as the context may require, and Lender. Borrower's obligations under the Note are secured by a properly recorded Mortgage, dated the same date as the Note encumbering the Property. Borrower agrees that, except as expressly modified in this Agreement, the Note and the Mortgage remain in full force and effect and are valid, binding obligations upon Borrower, and are properly secured by the Property.

This Agreement will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are hereafter referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in the Loan Documents.

In consideration of the covenants hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed as follows (notwithstanding anything to the contrary in the Loan Documents).

I understand that after I sign and return one copy of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Loan Documents. Further, except as otherwise specifically provided in this Agreement, the Loan Documents will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement:

1. **The Modification.**

   A. The current contractual due date has been changed from **AUGUST 1, 2020** to **DECEMBER 1, 2020**. The first modified contractual due date is **DECEMBER 1, 2020**.

   B. The maturity date will now be **FEBRUARY 1, 2047.**

   C. Interest at the rate of **3.2500%** will begin to accrue on the unpaid principal balance of **$200,947.98** ("Interest Bearing Principal Balance") as of **NOVEMBER 1, 2020.**

   D. The payment schedule for the modified loan is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|---------------------------|----------------------------------------|-------------------------------|------------------------|-------------------|
| 315 | 3.2500% | 11/01/2020 | $949.09 | $627.76 | $1,576.85 | 12/01/2020 |

Wells Custom Disaster Extend Mod 07242020_511



After the modification is complete, escrow payments adjust at least annually in accordance with applicable law therefore, the total monthly payment may change accordingly.

**2.   Additional Agreements.**

I agree to the following:

A.   If applicable, the Note may contain provisions allowing for changes in the interest rate and the monthly payment. The Note limits the amount the Borrower's interest rate can change at any one time and the maximum rate the Borrowers must pay.

B.   If the Borrower's balance has been reduced as a result of this Agreement, it is understood that any credit life, accident and health, and involuntary unemployment insurance written in connection with the Loan has been cancelled, and that any refund of unearned premiums or charges made because of the cancellation of such credit insurance is reflected in the amount due under this Agreement. **Exception:** In the state of California, Life, A&H, and IUI insurance must be cancelled, with refunds applied to the account prior to entry of the settlement transaction, even though there is no reduction in balance as part of the settlement.

C.   If the Loan has "Monthly Add-On Premium" Credit Life or Credit Accident & Health Insurance coverage, it is understood and agreed that the Borrowers acceptance of this Agreement will result in the cancellation of the above-mentioned insurances.

D.   If the Borrower's homeowners insurance should lapse, **Wells Fargo Home Mortgage** reserves the right to place Lender Placed Insurance (LPI) on the account. If LPI is placed on the account, the monthly payment could increase. All other terms of the Agreement will not be affected by the LPI and will remain in effect in accordance with this Agreement.

E.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Notice of Special Flood Hazard disclosure.

F.   CORRECTION AGREEMENT: The undersigned Borrower(s), for and in consideration of the approval, closing and funding of this Agreement, hereby grants **Wells Fargo Home Mortgage**, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 180 days from the closing date of the undersigned's Modification, or the date any and all documents that the lender requires to be recorded have been successfully recorded at the appropriate office, whichever is later. Borrower agrees to make and execute such other documents or papers as necessary or required to effectuate the terms and conditions of this Agreement, which, if approved and accepted by Lender, shall bind and inure to their heirs, executors, administrators, and assigns of the Borrower.

G.   All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating



to default in the making of payments under the Loan Documents shall also apply to default in the making of the payments under this Agreement.

H.   I agree that this Agreement will be null and void if the Lender is unable to receive all necessary title endorsement(s), title insurance product(s) and/or subordination Agreement(s).

I.   Borrower must deliver to **Wells Fargo Home Mortgage** a properly signed modification Agreement without alteration by **NOVEMBER 15, 2020**. If Borrower does not return a properly signed modification Agreement by this date and make all payments pursuant to the trial plan Agreement or any other required pre-modification payments, **Wells Fargo Home Mortgage** may deny or cancel this Agreement. If the Borrower returns a properly signed Agreement by said date, payments pursuant to the loan modification Agreement are due as outlined in this modification Agreement. **Wells Fargo Home Mortgage** may deny or cancel this loan modification Agreement if Borrower fails to make the first payment due pursuant to this loan modification Agreement.

**All Borrowers are required to sign and date this Agreement in blue or black ink only as the Borrowers' name appears below. If signed using any other color or method, the document will not be accepted and another copy of the Agreement will be sent to the Borrower to be signed.**

**By signing below, all Borrowers certify they have read this Agreement in its entirety, that all Borrowers know and understand the meaning and intent of this Agreement and that all Borrowers enter into this Agreement knowingly and voluntarily. By signing below, all Borrowers agree to all terms and conditions described on every page of this Agreement.**



In Witness Whereof, I have executed this Agreement.

Borrower: **BRIAN ECHARD**

**11/16/20**
Date

**11/16/20**
Date

**AMY ECHARD** *signing solely to acknowledge this Agreement, but not to incur any personal liability for the debt

[Space Below This Line for Acknowledgments]

### BORROWER ACKNOWLEDGMENT

State of OHIO

County of Delaware

The foregoing instrument was acknowledged before me this 11/16/2020 (date) by **BRIAN ECHARD, AMY ECHARD,** (name of person acknowledging)

Notary Public

Printed Name Desirae Flynn

My commission expires: 12/19/2022

DESIRAE FLYNN
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Franklin County
My Comm. Exp. 12/19/2022

Prepared by:
KIRAN KUMAR S
WELLS FARGO BANK, N.A.
1 HOME CAMPUS
DES MOINES, IA 50328
(800) 416-1472

RECORD AND RETURN TO:
FIRST AMERICAN TITLE CO.
FAMS – DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-9991

In Witness Whereof, the Lender have executed this Agreement.

**WELLS FARGO BANK, N.A.**

_____       _____       _____
By: (print name)   **Naeem S M Ayub**       (sign)       Date  03/02/2021
   (title)   **Vice** President Loan Documentation

_____   [Space Below This Line for Acknowledgments] _____

**LENDER ACKNOWLEDGMENT**

STATE OF  minnesota

COUNTY OF  Ramsey

This instrument was acknowledged before me _____ **MAR 0 2 2021** _____ (date) by
_____ Naeem SM Ayub _____ (name(s) of person(s)) as **Vice President Loan Documentation** (type
of authority, e.g., officer, trustee, etc.) of **WELLS FARGO BANK, N.A.** (name of party on behalf of whom
the instrument was executed).

_____
Notary Public

HARLIE KAY ANDERSON
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2023

Printed Name: __HARLIE KAY ANDERSON__

My Commission Expires:
**JAN 3 1 2023**

**EXHIBIT A**

**BORROWER(S): BRIAN ECHARD, MARRIED**

**LOAN NUMBER: (scan barcode)**

**LEGAL DESCRIPTION:**

**THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE STATE OF OHIO, COUNTY OF DELAWARE, AND DESCRIBED AS FOLLOWS:**

**REAL PROPERTY IN THE TOWNSHIP OF GENOA, COUNTY OF DELAWARE, STATE OF OHIO, AND IS DESCRIBED AS FOLLOWS:**

**BEING LOT NUMBER ONE THOUSAND NONE HUNDRED AND EIGHTY-NINE (1989) OF HIGHLAND LAKES EAST SECTION 1, AS
THE SAME IS NUMBERED AND DELINEATED UPON THE RECORDED PLAT THEREOF, OF RECORD IN PLAT CABINET 1, SLIDES
212 THROUGH 216, RECORDER'S OFFICE, DELAWARE COUNTY, OHIO.**

**ALSO KNOWN AS: 5473 SAINT ANDREWS DR, WESTERVILLE, OHIO 43082**



# EXHIBIT K

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO** | **HOME MORTGAGE**

August 14, 2020

BRIAN ECHARD
5473 SAINT ANDREWS DR
WESTERVILLE, OH 43082

| Account Information | |
|---|---|
| Online: | wellsfargo.com |
| Fax: | 1-866-359-7363 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ████0789 |
| Property address: | 5473 Saint Andrews D |
| | Westerville OH 43082 |

085

Dear Brian Echard:

Due to the COVID-19 crisis, we've provided you with short-term payment suspension (forbearance). We are legally required to send you the enclosed letter. This letter is for your information only.

You do not need to contact us as there is nothing for you to do right now. You are not required to make any payments during the forbearance. We will contact you near the end of the forbearance to review your financial situation and discuss options.

We're here to help
If you have questions, please call us at the number listed in the account information box. For more information on mortgage payment assistance, visit wellsfargo.com/mortgageassist.

Home Preservation Department
Wells Fargo Home Mortgage

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA 50306-0368

**WELLS FARGO | HOME MORTGAGE**

085

August 14, 2020

| Account Information | |
| --- | --- |
| Online: | wellsfargo.com |
| Fax: | 1-866-359-7363 |
| Telephone: | 1-800-416-1472 |
| Correspondence: | PO Box 10335 |
| | Des Moines, IA 50306 |
| Hours of operation: | Mon - Thurs, 7 a.m. - 9 p.m., |
| | Fri, 7 a.m. - 8 p.m., |
| | Sat, 8 a.m. - 4 p.m., CT |
| Loan number: | ████0789 |
| Property address: | 5473 Saint Andrews D |
| | Westerville OH 43082 |

BRIAN ECHARD
5473 SAINT ANDREWS DR
WESTERVILLE, OH 43082

Subject: Please contact us about the recently missed mortgage payment(s)

Dear Brian Echard:

Nos estamos poniendo en contacto con usted acerca de la cuenta de préstamo hipotecario porque queremos ayudarle. Llámenos al 1-800-416-1472 (marque 9 para recibir atención en español). Si tiene una discapacidad auditiva o del habla, atendemos llamadas de los servicios de retransmisión. Podemos hablar acerca de opciones para ayudarle a permanecer en su casa. Si usted no entiende esta carta, podemos brindarle servicios en su idioma. O si lo prefiere, puede hacer que se traduzca esta carta.

As the mortgage servicer, we are concerned about the recently missed payment(s) and would like to offer our assistance. Please contact us so that we can explore what options may be available to help you get back on track. Our goal is to work with you to find the best option based on your hardship. It is important that you act quickly. Fewer options may be available the longer you wait.

For customers with VA loans
The delinquency of the mortgage loan is a serious matter that could result in the loss of the home. If you are the Veteran whose entitlement was used to obtain this loan, you can also lose your entitlement to a future VA home loan guaranty. If you are not already working with us to resolve the delinquency, please call us to discuss your workout options. You may be able to make special payment arrangements that will reinstate the loan. You may also qualify for a repayment plan or loan modification.

VA has guaranteed a portion of the loan and wants to ensure that you receive every reasonable opportunity to bring the loan current and retain the home. VA can also answer any questions you have regarding your entitlement. If you have access to the Internet and would like to obtain more information, you may access the VA web site at www.benefits.va.gov. You may also learn where to speak to a VA Loan Technician by calling 1-877-827-3702.

If you prefer, you have the option to meet with us in person to discuss the status of your loan. You can do this by calling 1-877-697-8492.

| Account Information | |
|---|---|
| Loan number: | ■■■■0789 |
| Property address: | 5473 Saint Andrews D<br>Westerville OH 43082 |

**Information about the amount due**
The account is due for 4 payment(s) for the month(s) of May 1, 2020 through August 14, 2020 and late charges due on the account in the amount of $0.00. The loan is currently due for May 1, 2020 and due for each subsequent monthly payment since that date.

**Preservation of the property**
As stated in terms of your agreement, we may have the right to inspect the interior and exterior of the property. If we find that the property is abandoned, we may enter it to inspect, secure, and preserve it. To secure the property, we may replace a lock or cover any exposed openings or pools. To maintain and preserve it, we may cut the grass and prepare the property for winter. We may also make any repairs necessary to prevent further decline. Some of these tasks are required by local law or homeowners association rules.

We would like to help you - Please contact us at

1-800-416-1472
Wells Fargo Home Mortgage

**Mortgage assistance may be available**
• We can answer questions about the mortgage and explore options based on your individual hardship.
• We can determine if you qualify for assistance, including options to stay in the home or leave the home while avoiding foreclosure. (See Information on avoiding foreclosure below for an overview.)

**How to get help - You can reach us by**
• Phone: 1-800-416-1472 or Fax: 1-866-359-7363
• Mail: PO Box 10335 Des Moines, IA 50306
• Online at wellsfargo.com

## Additional resources

For a list of HUD-approved housing counseling agencies that can provide free foreclosure prevention and debt management information, as well as translation or other language assistance, contact one of the following federal government agencies.
• The U.S. Department of Housing and Urban Development (HUD) at 1-800-569-4287 or https://apps.hud.gov/offices/hsg/sfh/hcc/hcs.cfm

• The Consumer Financial Protection Bureau (CFPB) at 1-855-411-2372 or www.consumerfinance.gov/mortgagehelp

For additional information about preventing foreclosure, avoiding scams and accessing approved counseling at no cost to you, visit our website listed in the account information box above.

DR110 936 0023

| Account Information | |
|---|---|
| Loan number: | ▮▮▮0789 |
| Property address: | 5473 Saint Andrews D<br>Westerville OH 43082 |

We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents may have under the Servicemembers Civil Relief Act. Please see the enclosed details. If you are an active member of one of the military agencies listed, you may wish to discuss the account with a homeownership counselor.

**We're here to help**
Thank you for your prompt attention to this matter. We are here to help you with your delinquent mortgage.

If you have any questions or need additional assistance, please contact us at the number listed in the account information section of this letter. Right over the phone we'll determine what option is best to help overcome the mortgage payment challenges. We'll need some additional information from you, so please have the following handy when you call:

- The mortgage loan number
- Monthly gross income (before taxes) for each borrower
- Information about any financial hardship
- Monthly expenses

Wells Fargo Bank, N.A.

Enclosure

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of this account, please contact us at P.O. Box 10335, Des Moines, IA 50306. Please include the account number with all correspondence.

**Get free counseling to help manage expenses and avoid foreclosure.**
Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Where appropriate, Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose.

We may report information about your account to consumer reporting agencies. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. © 2019 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801

## Information on avoiding foreclosure

These options may be available to you depending on your hardship. There are options to help you stay in your home and bring your mortgage current, and options that allow you to leave your home while avoiding foreclosure. We can answer any questions you may have about these options, including the general eligibility requirements.

| Options to stay in your home | Overview | Benefit |
|---|---|---|
| Reinstatement | ó Pay all past due amounts in a single lump-sum payment.<br>ó Available if you have the funds to pay now. | Allows you to bring your mortgage current immediately. |
| Repayment plan | ó Pay all past due amounts together with your regular monthly payments over an extended period of time.<br>ó Available if you have sufficient income to cover more than your regular monthly payment. | Allows you time to bring your mortgage current without having to make a single-sum payment. |
| Forbearance plan | Make reduced payments or no payments for a specific period of time (for example, six months). During this time your mortgage will become increasingly delinquent. | Allows you time to improve your financial situation and possibly qualify for another option, such as a modification, upon completion of the forbearance plan. |
| Modification | ó Make modified payments based on new terms.<br>ó Requires your successful completion of a three-month trial period plan | ó Allows you to bring your mortgage current by permanently modifying your mortgage.<br>ó Intended to make your payments or terms more manageable; typically results in a lower monthly payment. |
| Options to leave your home | Overview | Benefit |
| Short sale | ó Sell your property.<br>ó Proceeds from the sale are used to pay off a portion of your mortgage balance when you owe more on your mortgage than the home is worth. | ó Allows you to transition out of your home to avoid foreclosure.<br>ó Relocation funds may be available.<br>ó The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |
| Mortgage Release (deed in lieu of foreclosure) | Transfer ownership of your property to us in exchange for relief from some or all of the mortgage debt. | ó Allows you to transition out of your home if you are unable to sell your home to avoid foreclosure.<br>ó Relocation funds may be available.<br>ó The remainder of your mortgage debt after the transfer of ownership may be forgiven, but there may be tax consequences. Consult a tax advisor. |

| **Servicemembers Civil Relief Act Notice Disclosure** | **U.S. Department of Housing and Urban Development Office of Housing** | **OMB Approval 2502 - 0584 Exp 3/31/2021** |

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. Sections 3901-4043) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?
- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty.
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds.
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?
- The SCRA states that, a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6% during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that, in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does a Servicemember or Dependent Request Relief Under the SCRA?
- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders.

    Wells Fargo Bank
    Attn: Special Loans/SCRA
    MAC T7416-01C
    PO Box 659810
    San Antonio, TX 78265-9110
    Telephone: 1-866-936-7272
    Fax: 1-877-658-4585

- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate. Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service. Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?
- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed

Forces is available at http://legalassistance.law.af.mil/content/locator.php.

- "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800- 342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

form **HUD-92070**
(6/2017)

Wells Fargo Home Mortgage
Return Mail Operations
PO Box 10368
Des Moines, IA  50306-0368

Brian Echard
5473 Saint Andrews Dr
Westerville, OH  43082

# EXHIBIT L



Wells Fargo
P.O. Box 10335
Des Moines, IA 50306-0335

September 09, 2020

Brian Echard
5473 Saint Andrews Dr.
Westerville, OH 43082

Subject: Resolution to your inquiry about account number ███████0789

Dear Brian Echard:

I'm glad we spoke about your concerns on August 12, 2020. I appreciate the opportunity to help you, and I'm sending this letter to summarize the key points from our conversation.

## Concerns with the forbearance plan

In your inquiry, you advised that the word forbearance was never used when this plan rolled out. You stated that there was a pull on your credit report, and a notation added that lowered your credit score.

We can confirm that once you agreed to the short term assistance being placed on the account, we sent you a letter dated April 08, 2020. This letter went over the details of the short term assistance plan, and what the next steps were that you needed to do. Please know that page four of this letter is labeled "Forbearance Plan Agreement" and shows the amounts that you had to pay for the next three months, which was $0.00. We have enclosed this letter for your records. We apologize for any confusion this process might have caused you.

When you were placed into the forbearance plan, please know that we did not pull your credit reporting. If you have additional information or documents that support that Wells Fargo pulled your credit. Please send us the requested information by fax or mail to:

> Wells Fargo Home Mortgage
> P.O. Box 10335
> Des Moines, IA 50306
> Fax: 1-866-278-1179

The account has continued to report as current on your credit report even during the payment suspension plan. We have also provided the credit bureaus with a comment code that says the account is in a forbearance plan. FICO has advised us that this "account in forbearance" code does not affect your FICO score. FICO is the credit score used by Wells Fargo for review of applications for credit and is also used by most lending companies. If you would like to review your FICO score, you can visit www.myfico.com.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

Echard
September 09, 2020
Page 2

The credit bureaus have independent credit score models. We cannot speculate how any of their proprietary models account for this code. However, generally, those are not used for the underwriting of credit.  If you apply for credit while on a forbearance plan, the lender will see the "account in forbearance" comment on your credit report, and the fact that your account is in forbearance may affect your ability to qualify for new credit or refinance.

Your account has now been removed from the forbearance program, and is in review for a modification to help bring the account current. As a result of being removed from the forbearance program, Wells Fargo submitted updates to the credit bureaus within 2-3 business days of the forbearance being removed to have the forbearance comment removed; however, it may take longer than this to appear on your credit report. The timeframe for processing updates varies between the credit bureaus, some companies may take up to 90 days to reflect these updates. We have also enclosed the letter dated July 22, 2020, that goes over the terms of the modification and trial plan being offered.

**Going forward**

We value your feedback and appreciate the time and effort you took to contact us. It's been my goal to fully address the concerns you've brought to our attention.

If you have any questions, or if you'd like to request additional documents that support our research, you may reply to me directly at the return address on this letter or by phone at 1-800-853-8516, extension 1335526023. I am available to assist you Monday through Friday, 8:00 a.m. to 5:00 p.m. Central Time. If you require immediate assistance and I am unavailable, other representatives are available to assist you at 1-800-853-8516, Monday through Friday, 7:00 a.m. to 7:00 p.m. Central Time.

Sincerely,

April Bailey
Case Specialist
Home Lending Executive Office

Enclosure(s)

Where appropriate Wells Fargo Home Mortgage is required to inform you that, as your account servicer, we are attempting to collect a debt and any information obtained will be used for that purpose. However, if you are a customer involved in an active bankruptcy case or you received a discharge in a bankruptcy case where the account was not otherwise reaffirmed or excepted from discharge, then this notice is being provided to you for informational purposes only, and this is not a bill or a request for payment as to any such customer(s).

With respect to those accounts secured by property located in the State of California, the state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

XUB/co10380191/cl936

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801